THOMAS HICKS, *Admr. v.* SOUTHERN OHIO QUARRIES CO.,
*A Corporation.*

(No. 8178)

Submitted October 29, 1935.   Decided December 14, 1935.

*Thos. P. Ryan, Wm. S. Ryan* and *Poffenbarger & Poffenbarger,* for plaintiff in error.

*Rummel, Blagg & Stone* and *Harper & Baker,* for defendants in error.

LITZ, PRESIDENT:

This is an action for death by wrongful act in which the court directed a verdict for defendants.

The deceased, Otis Rogers, was killed October 20, 1934, in a collision, at night, between a Ford automobile, in which he was riding as a guest, and a motor truck standing on the used portion of a public road, in Roane County, designated as State Route No. 5. The truck was one of three owned by Valla Mowery and Henry Mowery (doing business under the firm name of M. & M. Motor Express Company) and operated in the transportation of gravel and fine shale, which were being used by defendant, Southern Ohio Quarries Company, in surface improvement of the road under a contract between

it and the state road commission. The Quarries Company, by oral agreement, was paying Mowery thirty-five cents per ton to haul the material from railroad cars at Spencer to the place of use.

The trucks were loaded from the railroad cars by means of a conveyor which the company owned and operated. It seems also that the cars were hauled by the trucks, at the direction of servants of the company, to the place of loading. A spreading apparatus belonging to the company was attached to the loaded truck when it reached its destination. It was then driven slowly while the driver operated the bed hoist and a servant of the company manipulated the tail gate lever thereof, causing a gradual flow of the gravel into the spreader. This process of unloading, which was supervised by a foreman of the company, resulted in an even distribution of each load of gravel over one-half of the width of the road for a distance of 75 to 100 feet. The shale was later spread over the gravel by similar process without the use of the spreader. Agents of the company directed the drivers of the trucks when and what to haul. The trucks were operated day and night only when and as the material was needed. The company furnished the drivers to the Mowerys, through a Federal Re-employment Agency, but a foreman of the Mowerys supervised the drivers and the maintenance of the trucks. H. C. Slater, manager and treasurer of the defendant company, states it hired the drivers. Payroll reports made by the company to the state road commission, containing the names of the drivers and foreman, designated the trucks as rented. The company paid the wages of the drivers and foreman, and in turn deducted the amounts from the compensation to the Mowerys. The truck, with which the Ford car collided, had broken down en route from the place of loading to the point of distribution, and was being repaired at the time of or immediately before the accident. The action was brought upon the theory that Hickel, the driver of the truck, was the servant of the company. Defendants insist that Mowery was an independent contractor, and that there is no liability against the Quarries Company.

The defendant company relies upon *Porter Construction Co.*

v. *Burton,* 156 Okla. 72, 8 Pac. (2d) 64; *Billig* v. *Southern Pacific Co.,* 189 Cal. 477, 209 Pac. 241; *Manning* v. *Texas Employer's Assurance Assn.,* (Tex. Civ. App. 1933) 67 S. W. (2d) 389; *Wagoner* v. *A. A. Davis Construction Co.,* 112 Okla. 231, 240 Pac. 618; *Busch* v. *Seaboard By-Product Coke Co.,* 100 N. J. L. 304, 126 Atl. 311; and *Charles* v. *Barrett,* 233 N. Y. 127, 135 N. E. 199, involving hauling contracts.

The first case presented a compensation claim for injury sustained by Burton while employed by the construction company to haul with his own truck cement, sand and gravel at twenty-five cents for the first mile and fifteen cents for each additional mile. The foreman of the contractor directed him where to get the materials, which were being used by it in street improvement. At the places of loading and unloading, employees of the construction company directed Burton where to place his truck. The loading and unloading was also done by employees of the company. Burton was required to begin work at seven a. m., and continue while the concrete mixer was in operation. He was also directed to haul over a specified route, but only for the purpose of determining his compensation. In holding that Burton was an independent contractor, the court said: "An independent contractor is one who engages to perform certain services for another according to his own manner and method, free from control and discretion of his employer in all matters connected with the work, except as to the result or product" thereof.

In the *Billig* case, a general hauling contractor (Geiger) engaged Harris, the owner of a truck, to haul gasoline for Gilmore Petroleum Company. Harris furnished the truck and the driver (Pratt) for the compensation of $1.90 per ton of gasoline hauled. The court rejected the theory that Pratt was the servant of Geiger because the foreman of Geiger directed Pratt "where to load, and what to load, and how to load."

In the *Manning* case, James, the owner of trucks, was engaged in hauling road material for Dodd & Wedegartner (general contractors) from a chute at a railroad siding to the concrete mixer on the job for a stipulated compensation for each load. In determining whether the driver (Manning)

of one of the trucks was a servant of the general contractor, the court observed: "Looking to all of the facts surrounding this transaction, we conclude that James, an independent contractor, was the employer of Manning, exercising the right of control over his employment, and directing his movement by such means and methods as he thought proper. In no sense of the term 'employee' was Manning employed by Dodd & Wedegartner; they did not hire him, paid him nothing for his services, and were lacking in interest as to his action and movement, except to exercise the right of supervision of the work being done under their contract with James, seeing that the trucks were loaded and unloaded at specified places, as Dodd & Wedegartner had contracted with James."

*Wagoner* v. *A. A. Davis Construction Company* is also a compensation case in which the claimant owned and operated three trucks hauling gravel for a general contractor. The contract between claimant and the contractor was oral, was subject to termination at the will of either party, there being no time agreed upon nor any special quantity of gravel to be hauled. The particular circumstance relied upon by the claimant to establish the relationship of master and servant was that as he "was required to deposit the gravel as directed by respondent, he did not control the method by which his contract was being performed so as to make him an independent contractor within the rule established by the authorities." On this point the Court held: "It must be remembered, however, that the place at which the gravel was to be deposited was not fixed by the contract in any particular point, and therefore the directions given by respondent related merely to the results of the work rather than to the method by which the work was to be performed. An independent contractor is always subject to the direction of the employer as to the result of the work as distinguished from the method employed in its performance. There was no direction by the respondent as to how many trucks the claimant should use, or whether he should use team and wagon instead of trucks, or any direction as to the hours of labor. Nor did the respondent exercise any authority as to the workmen employed by claimant in the performance of his contract, the claimant

being left free to employ his own workmen at a wage agreed upon between them. It is also urged that the relation is that of employer and employee because the claimant did not have a specific and well-defined piece of work to perform for a lump sum, and that his services could be dispensed with by the employer at will. We do not think there is any merit in this contention. Owing to the peculiar nature of the work, the location of the place where the gravel should be dumped varied as the work of constructing the highway progressed, and we know of no reason why the existence of the relation of principal and independent contractor should be made to depend upon the nature and character of the work.''

The defendant in *Busch* v. *Seaboard By-Product Coke Company* was engaged in selling coal, and in order to make deliveries, entered into a contract with Cullum to deliver by his trucks at stipulated prices per ton. The trucks carried a sign on which appeared the name of defendant. The drivers were employed and paid by Cullum. The court held as a matter of law that the relation of master and servant did not exist between·the parties because the defendant loaded the trucks, gave the drivers the addresses of the customers, and instructed them where to make deliveries by means of a chute and where it would be necessary to carry the coal.

The determination of the status of independent contractor (a question ordinarily for the jury) depends upon the peculiar facts of the particular case. ''Whether or not the right of control or the want of it, determinative of the relationship, exists, is ordinarily a question of fact for the jury, and is usually arrived at by inference from the terms of the contract, the character of the employment, and all the relevant facts and circumstances. And the court is not justified in taking such question from the jury unless the evidence in regard to it is very clear and unequivocal.'' 10 Blashfield, Cyclopedia of Automobile Law and Practice, sec. 6641, p. 416.

In *Smith Brothers Contracting Co. et al.* v. *O'Bryan*, (Tex. Civ. App.) 62 S. W. (2d) 505, O'Bryan recovered judgment against Smith Brothers for personal injury sustained by him when struck by a truck owned and operated by Henson in hauling road material for Smith Brothers. The syllabus of

the case follows: ''Whether driver of truck involved in collision and hauling for defendants who paid per load without control of driver was independent contractor for whose negligence defendants were not liable held for jury. Evidence disclosed that truck driver was engaged in trucking business for himself; that he owned truck used at time of collision; that defendant would pay per load and had no direction over truck driver as to number of loads and route taken; that there was no contract between defendant and its truckers; and that truck driver paid for oil, gasoline, and repairs.''

*Newell Contracting Co. et al.* v. *Lindahl,* 181 Ark. 272, 25 S. W. (2d) 1052, involved a contract whereby the contractor and Allison hired Glover to use his and other trucks in hauling and placing gravel on a public highway which was being improved under a contract with the state highway department. Glover hired Corn to drive his truck. Lindahl sued the contracting company and Allison for damage to his automobile in a collision with the Glover truck while engaged in hauling the material for the company. Although the case involved no peculiar facts, the court held that the testimony was sufficient to present the issue as to whether Allison and Glover were independent contractors.

In *Delamar & Allison* v. *Ward,* 184 Ark. 82, 41 S. W. (2d) 760, Delamar & Allison contracted with the state highway department to haul and spread gravel upon public roads by ''force account.'' They hired numerous persons using their own trucks to do the hauling. The pit from which the gravel was taken was controlled by Delamar & Allison who also retained a certain part of the wages of the drivers of the trucks. An employee of the highway department supervised the dumping of the gravel on the road and the route over which the trucks traveled was under the supervision of Delamar & Allison. The court held that the evidence was sufficient to sustain a finding that those engaged in the hauling were not independent contractors.

*Chase* v. *The American Press Brick Co.,* (Mo. App.) 31 S. W. (2d) 246, involved a contract between the Brick Company and Doyle whereby Doyle was engaged to haul clay for the company at so much per ton. An employee of the com-

pany was in charge of the clay fields, and its superintendent directed the driver where to unload the material. The court held that the facts were sufficient to submit the case to the jury on the issue as to whether Doyle was the servant of the company or an independent contractor.

In *McLeod* v. *Security Union Insurance Co.*, (Tex. Civ. App.) 22 S. W. (2d) 952, McLeod asserted a claim for compensation for injury sustained while engaged in driving a truck owned by Menefee, who had an oral contract with Whitham & Company to haul gravel from the pit to a washing apparatus owned and used by the company on a street paving job. The services of McLeod were to be acceptance to Whitham & Company. The entire operation of loading and unloading the gravel was under the control of Whitham & Company who determined the hours for hauling the gravel. The court held that the evidence was sufficient to support the issue as to whether McLeod was the servant of Whitham & Company.

In *Ellis & Lewis* v. *Warner*, 180 Ark. 53, 20 S. W. (2d) 320, Ellis & Lewis, as contractors in the construction of a rock road, employed thirty persons with trucks to haul crushed rock to be distributed along the highway as directed by Ellis & Lewis. The haulers furnished their own trucks, paid all the expenses of operation, and worked as and when they desired for a stipulated compensation per ton. The court held that the evidence was sufficient to go to the jury on the issue as to whether the relation between the contractors and the haulers was that of master and servant or independent contractors.

In view of the facts that the drivers of the trucks were subject to the call of the company, day or night; that they worked only as the material was used and assisted the company employees in incorporating it into the work; and that they were furnished by the company to Mowerys, and the other facts and circumstances in the case, we are of opinion it should have been submitted to the jury. The facts in the case, although virtually undisputed, are such as would in our opinion justify more than one reasonable inference by the jury. Where the admitted facts are such that fair-minded

men might draw different inferences from them, the case is one for the jury rather than the court. *Ketterman* v. *Dry Fork Railroad Co.*, 48 W. Va. 606, 37 S. E. 683.

The judgment of *nil capiat* is reversed and the case remanded for further proceedings.

*Reversed and remanded.*