CLARK COLERIDER *et al.* *v.* CENTRAL NATIONAL BANK OF BUCKHANNON *et al.*

(No. 9419)

Submitted April 6, 1943. Decided June 1, 1943.

*Jerome V. Hall, Myron B. Hymes* and *Haymond Maxwell,* for appellants.

*H. Roy Waugh,* for appellees.

FOX, JUDGE:

The defendants appeal from a decree of the Circuit Court of Upshur County, entered on the 28th day of April, 1942, in the chancery cause of Clark Colerider,

C. J. Gibson, U. G. Young, Jr., Executor of the Estate of Mary A. Gibson, deceased, Sanford Graham and L. O. Martin, against the Central National Bank of Buckhannon, and John M. Stockert, C. R. Byrne and Central National Bank, Trustees for the creditors of the Traders National Bank of Buckhannon, by which decree certain securities pledged by the plaintiffs, Colerider, Graham and Martin, and by C. W. Gibson, under a written agreement dated June 27, 1932, were ordered to be surrendered by the defendants to the plaintiffs. C. J. Gibson and U. G. Young, Jr., Executor, joined in said suit as representatives of the rights of the C. W. Gibson estate. The parties will be referred to in this opinion as they stood in the court below.

On the 30th day of August, 1926, William Post conveyed to the Pecks Run Coal Company, a corporation, a tract of 449.12 acres of land situated on Pecks Run in Upshur County, for the consideration of $157,192.00, of which amount $20,000.00 was paid in cash, and for the residue the grantee executed to the grantor its nine notes, each for the sum of $15,243.55-5/9, payable annually in one to nine years, with interest from date, payable annually, to secure the payment of which notes a vendor's lien was retained on the face of the conveyance, but with this provision: "It is agreed and understood that no timber on said tract of land is to be cut therefrom until after the fifth deferred payment of purchase money is fully paid, unless otherwise mutually agreed upon". The first of the deferred payments was paid, and the note payable in two years was assigned to the Koblegard Company or P. H. Koblegard.

In the year 1928, William Post was heavily indebted to the Traders National Bank of Buckhannon. His direct liabilities aggregated $15,000.00, and his indirect obligations, presumably through endorsement and otherwise, amounted to at least $40,000.00. His direct liabilities were represented by five notes in various amounts. At some time in that year Post pledged with the bank, as collateral security for said notes, the nine-year deferred

762

purchase money note aforesaid. We have no way of knowing what the collateral agreement was when the note was first pledged with said bank as collateral. These obligations were renewed, and the last renewals prior to the closing of the bank are in the record. One of these notes is for the sum of $700.00, dated June 16, 1931, with this description of the collateral: "Pecks Run Coal Co. note $15,243.55 dated August 30/26 @ nine years Same collateral on all notes carried". Another note dated July 3, 1931, for $2500.00 contains this description of collateral: "Pecks Run Coal Company note $15,243.55 dated 8/30/26 at 9 years favor of William Post Same collateral on all other direct loans"; another note dated August 12, 1931, for $6,000.00 with this description of collateral: "Pecks Run Coal Company note $15,243.55 due Aug. 30, 1937"; another note dated August 27, 1931, for $5200.00 with the same description of collateral as last quoted above; and another note dated September 5, 1931, for $600.00 with this description of collateral: "Pecks Run Coal Company note. Same collateral on all notes signed by Wm. Post". All of these notes were executed on the same form, and, following the promise to pay, and the amount of the note, contained the following: "I hereby pledge and deposit with said Bank, as collateral security for payment of this or any other direct or indirect liability or liabilities of mine to said Bank, due or to become due, or that may be hereafter contracted the following property: * * * '"; also the following: "Also by way of second lien, subsequent to the lien hereby created to secure the payment of this note I pledge the said collaterals to secure the payment of any and all other debts I now owe the said bank, and of any as well as of all other debts which _____ may hereafter owe to said bank. Sale or collection may be made for the enforcement of such security in like manner as hereinbefore provided".

The Traders National Bank closed on the 15th day of October, 1931, and the notes above described were then held by said bank. It appears that the receiver who took charge of the bank devoted his efforts, in part, to strength-

ening the assets of the bank, with a view to its reorganization. It also appears that, upon investigation, those interested in the bank came to the conclusion that the assets of William Post would fall short by some $20,000.00 of paying his indebtedness to the bank. It seems to have been contemplated that Post's paper was to be taken over by the new organization, provided the same could be put in form such as would make it safe to do so. At the time of the closing of the Traders National Bank, the directors were Clark Colerider, C. W. Gibson, Sanford Graham, L. O. Martin, William Post, John Post, J. C. McWhorter, U. G. Young, and C. D. Munson, and these directors seemed to be fearful of some claim of liability against them by reason of excessive loans. This situation furnishes the motive for the attempt on the part of the directors to guarantee, to some extent, the payment of the William Post obligations.

As noted above, William Post had assigned to P. H. Koblegard, or the Koblegard Company, the note of $15,243.55-5/9 due two years after date, and at some time, either before or after said assignment, the nine-year note was pledged as collateral with the Traders National Bank. A dispute arose as to which assignment was first made, the priority as to payment, under the vendor's lien, depending upon the date of the assignment. In this situation a paper was prepared, dated May 17, 1932, and signed by all of the directors of the Traders National Bank except the plaintiff, Clark Colerider. This paper is in the words and figures following:

"Buckhannon, West Virginia
May 17th, 1932

WHEREAS the Traders National Bank of Buckhannon is in receivership, and also in course of reorganization by which such receivership is to be discontinued, and the new or reorganized bank is to take over from said bank in receivership, or from the receiver thereof, all of said receivership bank's assets and assume the payment of all liabilities of such bank now ·in receivership, and there was endorsed to the said Trad-

ers National Bank before such receivership, by William Post, a note for $15,243.59-5/9, being one of a series of notes of the same amount made by the Pecks Run Coal Company and secured by a vendor's lien in a deed made by said Post and wife to said company, dated August 30th, 1926, and recorded in the County Court Clerk's office of Upshur County, West Virginia, in Deed Book No. 78, at page 480, and was so endorsed by said Post to said bank as collateral security for certain debt or debts owing by him to said bank, and which note so endorsed is now held by Roger E. Brooks, receiver of said Traders National Bank.

WHEREAS, another of said notes of equal amount was also endorsed by said Post to P. H. Koblegard and/or the Koblegard Company, and controversy has arisen between the said Koblegard and/or the Koblegard Company and the receiver of said bank as to which of said two notes was first so endorsed and delivered, and consequently, whether said bank or said Koblegard and/or the Koblegard Company, under the law, has a first lien upon said property under and by virtue of said vendor's lien securing said notes.

AND, WHEREAS, in case said bank shall be so reopened and reorganized upon the terms and conditions so contemplated, the directors of said Traders National Bank so in receivership, will be released and absolved from all liability under the law for any excess loan alleged to have been made by said board of directors for and on behalf of said Traders National Bank.

Now, THEREFORE, in consideration of the premises, and of the reorganization and reopening of said bank upon the terms and conditions aforesaid, we jointly and severally hereby agree, in case said bank is so reorganized and reopened, and in case it be definitely ascertained that the said Traders National Bank has a second lien by reason of such endorsement, and that the said Koblegard and/or the Koblegard Company has a first lien, to make good to said Traders National Bank, its receiver, and/or its successor, and to pay any loss sustained by reason of the said Koblegard and/or the Koblegard Company hav-

ing such priority over said bank under said vendor's lien, together with any costs and expenses incurred in determining such priority.

Any rents, income, profit or royalties received by said bank or its receiver or successor from said property shall be applied on one of said two notes.

WITNESS the following signatures."

On June 18, 1932, all of the directors of the Traders National Bank executed a paper, which reads as follows:

"WHEREAS, we, the undersigned, directors of the closed Traders National Bank, have guaranteed to the said Bank the payment of a note assigned to the said bank of William Post, calling, for the sum of $15,243.59-5/9, and dated the 30 day of Aug. 1926, and which note was executed to the said William Post by the Pecks Run Coal Company, a corporation, and is secured by a vendor's lien on about 460 acres of land situate on the waters of Pecks Run, in Warren District, in Upshur County, and which note was given to secure the payment of certain obligations of William Post, executed to the said Bank, aggregating about $15,000.00, and which notes are further secured by a deed of trust made by William Post and his wife to H. Roy Waugh, trustee, dated May 25th, 1932.

AND, WHEREAS, P. H. Koblegard, or the Koblegard Company, holds a note for a like amount, assigned by the said William Post, executed to him by the Pecks Run Coal Company, and is one of a series of notes executed by said company to the said Post, about which there is an issue between the said Traders National Bank and the said P. H. Koblegard or Koblegard Company, as to the priority of said liens by reasons of the date of the assignment of said notes respectively.

AND, WHEREAS, the undersigned guarantors have given said guarantee in order to insure the opening of the Traders National Bank and are to be released of all liability, save and except as guar-

antors in the event of the opening of said bank, and for and in consideration of the premises, and to secure the opening of said bank, and to save any litigation on account of the questions arising between the said Bank and the said Koblegard, the undersigned agree to accept from the Traders National Bank, or the receiver thereof, an assignment to them of said note, so held by the said Traders National Bank as collateral security, with the following endorsement thereon:

'The within note is subordinate in lien to that certain note of like date and amount made by the Pecks Run Coal Company, payable to the order of William Post, on two years after the date thereof, which note is now held by the Koblegard Company as collateral security for a debt of William Post and others,' provided said Koblegard or Koblegard and Company shall not disturb the William Post Trust.

And we further agree that any payments made to us on accounts of the note so assigned to us are to be paid from time to time as made to the Traders National Bank, the receiver thereof, or to the assignee of such receiver, to be credited on the notes for which said note was held as collateral, and such payments so made shall operate as a release of the guarantors on their guarantee to the amount of the payments so made provided, however, that if said notes are paid in full by the said William Post, along with his other obligations to the Bank, such payments shall likewise operate as a release of the guarantors to the extent of such payments so made.

WITNESS OUR hands this the 18th day of June, 1932."

On the 27th day of June, 1932, C. W. Gibson, Clark Colerider, Sanford Graham and L. O. Martin submitted to the receiver of the Traders National Bank a paper which reads as follows:

"In consideration of the reorganization and re-opening of the Traders National Bank of Buckhannon, and in further consideration of our re-

lease from all liability under the law for any excess loans alleged to have been made by the board of directors for and on behalf of said Traders National Bank, we, whose names are hereunto signed, and affixed, propose to Roger E. Brooks, Receiver of said Bank and to the reorganization committee, of which Ed. C. Young is chairman, to place with the Receiver of said Bank securities entirely satisfactory to the said Receiver, and to the said committee in the amount set opposite our respective names, to be held by them as a guarantee to the payment to the said Receiver or to the vendee of said Receiver, or to the reorganized bank, the note esecuted by the Pecks. Run Coal Company to William Post, dated August 30th, 1926, calling for the sum of $15,243.59-5/9, and by said Post endorsed to the Traders National Bank, and held by said Bank as collateral security for certain debts owing by said Post to said Bank, the aggregate amount of said note not to exceed $20,000.00, provided, however, that any interest accumulated on said securities pending the liquidation of the Post obligation is to be paid to us, and any party signing this writing shall have his name stricken from the guarantee bond dated May 17th, 1932, and this writing shall be a substitute of our names on said bond, and provided further that we shall not be liable for any further amount than that fixed opposite our signatures hereto.

We submit this paper with the bond signed by the remaining directors of the bank as our guarantee, the two papers to be taken together and read as a whole.

In the event of the payment of the Post obligations to said bank out of his property, or by him, without loss to the bank then the securities are to be returned to us.

Dated this 27th day of June, 1932.

| C. W. Gibson | $5,000.00 |
| Clark Colerider | $5,000.00 |
| Sanford Graham | $3,000.00 |
| L. O. Martin | $3,000.00." |

And by a paper not dated, but referring to the paper

last quoted above, the remaining directors of the Traders National Bank, U. G. Young, J. C. McWhorter, William Post, C. D. Munson and J. H. Post executed the following paper:

### "SUPPLEMENTAL BOND NOT DATED

Whereas, a bond in the penalty of $20,000.00 payable to Roger E. Brooks, receiver of the Traders National Bank and to the Reorganization Committee of said bank, conditioned to guarantee to the said Receiver the payment of the Pecks Run Coal Company note to the amount of $20,000.00, in the event that the property of William Post fails to pay the obligations to the said bank, which was signed by all of the old board of directors except one.

And Whereas, Clark Colerider and C. W. Gibson have signed a separate agreement agreeing and binding themselves each to deliver satisfactory securities to the said Roger E. Brooks, receiver, to the amount of $5,000.00 each, and L. O. Martin and Sanford Graham have each agreed to deliver satisfactory securities in the sum of $3,000.00 each, and their names have been taken off the bond, and the securities and agreement substituted in lieu of their names.

Now in consideration of the premises, we, William Post, John Post, C. D. Munson, U. G. Young and J. C. McWhorter, agree to be bound on said bond to the extent of $4,000.00 and agree that the names of said Clark Colerider, C. W. Gibson, Sanford Graham and L. O. Martin may be erased from said bond."

Some months after the execution of these papers, the Central National Bank of Buckhannon was organized, and assumed the payment of seventy-five per cent of the deposits of the Traders National Bank. The new organization took over a part of the William Post obligations, and a part thereof were turned over to trustees for the benefit of the depositors, payment of whose deposits had not been assumed by the new bank. These trustees at

the date of the institution of this suit were the defendants John M. Stockert, C. R. Byrne and the Central National Bank of Buckhannon. Prior to this reorganization, the plaintiffs, to secure their undertaking of June 27, 1932, pledged the following securities: Clark Colerider and C. W. Gibson each deposited bonds of the United States Government in the amount of $5,000.00, and Sanford Graham and L. O. Martin, separately, executed deeds of trust on real estate owned by them, respectively, securing, as to each of them, the sum of $3,000.00, making an aggregate of $16,000.00.

On the 23rd of December, 1932, the Pecks Run Coal Company executed a trust to John S. Stump, Trustee, by which it conveyed to him the 449.12 acres of land which had been conveyed to it by William Post. This conveyance was made subject to the vendor's lien retained in the William Post deed, and was made to secure the payment of two notes of $15,243.55-5/9, dated August 30, 1926, and payable in two and nine years from the date thereof, with interest payable annually, being the same two notes which William Post had assigned to the Koblegards and to the Traders National Bank. Under this trust, the grantor retained the possession of the property, was permitted to engage in coal mining operations thereon, and was required to pay to the Trustee a specified royalty for each and every net ton of 2000 pounds of run-of-the-mine coal, mined or removed from said premises, and sold by the grantor, the proceeds of such royalty to be applied on the notes secured by the trust. It was later agreed that interest had been paid on these two obligations to the first of February, 1931. The Trustee, from the proceeds of the royalties aforesaid, paid on the note assigned to the Traders National Bank of Buckhannon, the sum of $5,106.58, and no question is raised as to this payment or the amount thereof.

William Post was adjudged a bankrupt, and out of his estate there was paid on his obligations to the Traders National Bank the sum of $5,163.67. The record is cloudy as to this payment. For example, it does not disclose

whether the sum paid from the bankruptcy represented, in whole or in part, dividends on the Pecks Run note endorsed by Post and held by the Traders National Bank or its successors. Obviously, if such note was proven in the bankruptcy proceeding, and reported as an obligation of Post, and dividends paid thereon, the amount of such dividends should have been applied on that note, to the relief of those who had guaranteed the payment thereof. On the other hand, if such amount was paid as dividends on obligations proven, other than the Pecks Run note, the same rule would not apply.

Matters ran along for several years. The Central National Bank and the Trustees for the Traders National Bank held the securities pledged by the plaintiffs, to secure their undertaking of June 27, 1932. The Pecks Run Coal Company continued to hold the land conveyed to it by William Post. In July, 1939, at the request of the plaintiffs, the Central National Bank, and the trustees for the Traders National Bank assets, instituted their suit against the Pecks Run Coal Company, and others, including the Koblegard Company, and Hurst H. Koblegard, to enforce the vendor's lien securing the payment of the $15,243.55-5/9 note held by it, and on February 2, 1940, a decree was entered in said cause, against the Pecks Run Coal Company, for the sum of $18,312.58, including interest to January 8, 1940, as the sum then due on the nine-year note aforesaid. Of this sum, $9,948.30 was decreed to be paid to the Central National Bank, and the residue to the Trustees of the Traders National Bank, and it was provided therein that the sum so decreed to said Trustees should be applied on unpaid debts of William Post to them, which, as of January 8, 1940, it was stated, aggregated the sum of $26,154.05, to which balance the following reference is made in the decree: "for which last named note the said note for $15,243.55-5/9 is pledged as collateral security". It should be noted, however, that plaintiffs herein were not parties to this suit and, therefore, are not bound by this decree.

Following this decree, the Pecks Run Coal Company

property was sold at the price of $13,600.00, and, after costs and expenses of sale were paid, the proceeds of the sale were distributed as follows: To the Central National Bank, for taxes advanced, $1260.70; to the Koblegard Company, for the balance due on the note due in two years, assigned to it, $5,254.85; and to the Central National Bank on the nine-year note aforesaid, held by it, $6,082.51. These payments were made as of February 8, 1941. A report of these disbursements was made to the court and approved, and in the decree approving this report it was ascertained that, after the application of these payments, there was still due from the Pecks Run Coal Company the following sums: To the Central National Bank of Buckhannon, $4,512.42, and to John M. Stockert, C. R. Byrne and the Central National Bank, Trustees, the sum of $8,907.96; and a decree against the Pecks Run Coal Company was entered for said sums. Following the entry of this decree, the Pecks Run Coal Company made a proposition of compromise, by which it proposed to pay, and did pay, the sum of $5,000.00 in settlement of said decrees. Under an agreement between the plaintiffs, Central National Bank, and the Trustees aforesaid, this $5,000.00 was applied as follows: $1,681.20 on the decree in favor of the Central National Bank, and $3,318.80 to the Trustees for the Traders National Bank. After the application of these payments, and taking interest into consideration, it is now claimed by the defendants that the securities pledged by the plaintiffs are subject to the claims of the Central National Bank and the said Trustees, as of November 8, 1941, in the aggregate sum of $9,024.47. The contention of the plaintiffs is, first, that they only guaranteed the payment of the William Post direct obligations to the Traders National Bank; and, second, that these obligations have been paid in full and that they are entitled to the surrender of the securities pledged by them.

At some time after Post assigned the notes due in two and nine years, as aforesaid, he assigned the remaining notes, those due in from three to eight years, to Hurst H. Koblegard, or, at any rate, said Koblegard became the

owner thereof. On October 30, 1933, the Pecks Run Coal Company conveyed to Hurst H. Koblegard the tract of 449.12 acres of land, conveyed to it by William Post, excepting the coal in said land, and subject to the vendor's lien retained in the deed from William Post, to the Pecks Run Coal Company, dated August 30, 1926, and the deed of trust made by the Coal Company to John S. Stump, Trustee, dated December 23, 1932. It is understood that this conveyance was made in consideration of the surrender of the six notes aforesaid. The record is not entirely clear on this point, but this seems to be conceded by all the parties in interest. Subsequent to this conveyance, Koblegard, or someone acting under his direction, removed the timber from this land. No part of the value of this timber has ever been applied on the vendor's lien debts, represented by the two-year and nine-year notes held by Koblegard, and the Central National Bank and the Trustees of the Traders National Bank. The evidence discloses that at the time the timber was being removed, the plaintiffs, and the defendants as well, knew of such removal. No steps were taken to enjoin the removal of the timber, or to bring about the application of the value thereof to the vendor's lien aforesaid. While, in view of the decision of the trial court, it was not necessary, in that court, to give the point consideration, the question of the obligation of the respective parties to take action to protect the vendor's lien against the destruction of a part of the security sustaining the same, fairly arises on the record before us. This question will be later discussed.

The plaintiffs instituted their suit on April 12, 1941. In their bill they allege the matters which we have outlined in this opinion, and allege that they are entitled to the surrender of the securities pledged by them. The prayer of their bill is that the Central National Bank be enjoined from disposing of the bonds pledged by Clark Colerider and C. W. Gibson, and from foreclosing on the deeds of trust executed by Sanford Graham and L. O. Martin; that all of said securities be surrendered to the plaintiffs; and for general relief. Defendants answered the bill, and the

case was developed by proof and exhibits. The Circuit Court found for the plaintiffs and decreed to them the relief prayed for in their bill.

The two controlling questions in this case, in the order stated, are (1) the force to be given to the collateral agreement between William Post and the Traders National Bank; and (2) the legal effect of the guarantee made by the plaintiffs by the writing of June 27, 1932.

As to the first question, we are of the opinion that the several collateral agreements entered into by William Post in 1931, immediately before the closing of the Traders National Bank, pledged with that bank, the Pecks Run Coal Company note, due in nine years from date, for the payment, not only of the obligations to which the collateral was attached, but for all other obligations, direct or indirect, for which the said Post had, or might thereafter, become liable to said bank. The language of the collateral agreements is too clear to permit any doubt as to what was intended. Take the note of $700.00 dated June 16, 1931, and made by William Post. He agreed to pay the said sum to the Traders National Bank four months after date and he states: "* * * I hereby pledge and deposit with said Bank as collateral security for payment of this or any other direct or indirect liability or liabilities of mine to said Bank, due or to become due, or that may be hereafter contracted the following property". Collateral deposited with a note is, ordinarily, pledged, primarily, for the purpose of paying that particular note, and that explains the later provision of this collateral agreement which says: "Also by way of second lien, subsequent to the lien hereby created to secure the payment of this note I pledge the said collaterals to secure the payment of any and all other debts I now owe the said bank, and of any as well as of all other debts which _____ may hereafter owe to said bank * * *". Post was directly indebted to the Traders National Bank in the sum of $15,000.00, and, the collateral pledged being of the apparent value of at least the face of the note pledged, was by the several notes executed made as collateral for all of them, and the collateral so filed

stood primarily as security for these direct obligations; but the contract went further, and provided that it should also stand as security for all other obligations then due, or to become due, from Post to the bank. The description of collateral contained in the several notes is not important, being merely a matter of identification,—for the purpose of showing that the several notes were intended to be secured by the Pecks Run Coal Company pledged note.

The collateral agreement being so clear and unambiguous, there is no room for oral testimony which in any wise tends to vary or contradict the same. The testimony of Sanford Graham, Clark Colerider and Ed. C. Young, to the effect that it was the understanding that the Pecks Run Coal Company note was pledged for the sole purpose of securing the payment of Post's direct obligations to the Traders National Bank, cannot be heard to contradict the plain terms of the collateral agreements. These writings, in the circumstances of this case, must be held to be the repository of the agreement between the parties, and can only be modified by subsequent acts or agreement of the parties. To hold that they can be changed by what the parties say they understood, would be to run counter to well-settled rules necessary to be applied in commercial transactions. Contemporaneous oral agreements cannot be considered. *Paxton* v. *Oil Company,* 80 W. Va. 187, 94 S. E. 472; *Bank* v. *Foster,* 112 W. Va. 520, 165 S. E. 802; *Anderson* v. *Hyman,* 113 W. Va. 760, 169 S. E. 741; *O'Farrell* v. *Virginia Public Service Company,* 115 W. Va. 502, 177 S. E. 304; *Central Trust Company* v. *Virginia Trust Company,* 120 W. Va. 23, 197 S. E. 12. For a stronger reason understandings of parties cannot be. We are of the opinion, therefore, that the note of the Pecks Run Coal Company to William Post, payable nine years after date, and pledged with the Traders National Bank of Buckhannon, covered the direct and indirect obligations of William Post to said Bank and not the direct obligations alone.

We come to the second question stated above. The agreement of June 27, 1932, signed by C. W. Gibson, Clark

Colerider, Sanford Graham and L. O. Martin, must be considered along with the other writings executed prior thereto and, indeed, the paper itself so provides. The writing of May 17, 1932, signed by all of the directors except Clark Colerider, was executed at a time when the status of the two-year note and the nine-year note, in respect to priority, had not been settled. Koblegard was claiming to have a first lien, contending that his assignment came first in point of time. In this situation, what the directors attempted to do was to "make good to said Traders National Bank, its receiver and/or its successor, and to pay any loss sustained by reason of said Koblegard and/or the Koblegard Company having such priority over said bank under said vendor's lien, together with any costs and expenses incurred in determining such priority". We assume that it was contemplated that, in the event Koblegard had the first lien, that fact might prevent the collection of the note held by the Traders National Bank, whereas if the Bank had the first lien its note could be collected. This undertaking was to secure the bank against any loss in the event that Koblegard prevailed in his contention. On the 18th of June, Koblegard's contention seems to have been conceded. On that day all of the directors of the Traders National Bank agreed, in effect, that the note held by the Traders National Bank was subordinate to the note held by Koblegard, so that, thereafter, there was no question but that the Koblegard note would have to be first paid, and the value of note held by the Traders National Bank became doubtful. This being the situation, the agreement of June 27, 1932, was executed. Those who signed that agreement did not want to guarantee the whole of the Pecks Run Coal Company note, or the whole of the $20,000.00 which was apparently required to be guaranteed in support of the William Post paper; nor did any one of the four men who signed the said paper desire to become responsible beyond a certain amount. The writing speaks for itself, and shows what each signer undertook to do. The aggregate liability was limited to $16,000.00 and individual liability was as stated in the agreement. The

important point is, what did these men agree to do? The writing says that in consideration of the reorganization of the Traders National Bank, and their release from liability for any excess loans which might have been made by the board of directors of the bank, they proposed to the Receiver or to the Reorganization Committee "to place with the Receiver of said Bank securities entirely satisfactory to said Receiver, and to said Committee in the amount set opposite our respective names, to be held by them as a guarantee to the payment to the Receiver or to the vendee of said Receiver, or to the reorganized Bank the note executed by the Pecks Run Coal Company to William Post dated August 30, 1926, calling for the sum of $15,243.55-5/9, and by said Post endorsed to the Traders National Bank, and held by said Bank as collateral security for certain debts owing by said Post to said Bank, the aggregate amount of said note not to exceed $20,000.00". We do not think more clear and appropriate language could have been used to express the intent to guarantee the payment of the Pecks Run Coal Company note. The note itself is described, and it is stated that it is held as collateral by the Traders National Bank as security for "certain debts". These debts are not further described, but when we go to the collateral agreements, we find that these certain debts for which the collateral was pledged were the notes to which the collateral was attached, and other obligations, direct or indirect, for the payment of which the collateral was likewise pledged. We see no escape from the holding that what was done by this agreement was to guarantee the payment of the Pecks Run Coal Company note, to the extent of $16,000.00; and, considering all the writings together, that it was intended to guarantee the sum of $20,000.00 on account of the William Post obligations, the other $4,000.00 to be paid by the other directors, under the writing executed by them under date of May 17, 1932, and the undated writing executed subsequent to the writing of June 27, 1932, and that such intention was to be carried into effect by a guarantee of the payment of the Pecks Run Coal Company note. The sev-

eral writings clearly show that a guarantee of $20,000.00 was required, and of that amount the plaintiffs assumed the burden of $16,000.00. The required guarantee was in excess of Post's direct obligations, as was the amount of plaintiffs' undertaking. This being true, how can it be said that only the direct obligations were guaranteed? We would not be justified, from anything appearing in the record, in giving to this agreement any construction other than that which the language employed clearly shows the parties had in mind. These parties, their successors and representatives, are entitled to all of the equities which the situation calls for, in the way of having proper payments applied, but, on the primary question of their liability, we hold that what they did was to guarantee, to the extent of $16,000.00, the payment of the Pecks Run Coal Company note held by the Traders National Bank or its receiver, and that the Central National Bank, and the Trustees of the Traders National Bank, have succeeded to the rights of the Traders National Bank and its receiver.

As indicated above, no question is raised as to the payment of $5,106.58 made by John S. Stump, Trustee; nor as to the amount derived from the sale of the Pecks Run Coal Company property, $6,082.51. There is likewise no question as to the payment of $5,000.00 made in compromise of the deficiency decree. In our view of the case, the manner in which this $5,000.00 was distributed, as between the Central National Bank and the Trustees, is a matter of no consequence to the plaintiffs, and one with which only the Bank and the Trustees are concerned. As stated, the proper application of payments made on William Post's obligation from the bankruptcy proceeding against him, depend entirely on whether the Pecks Run Coal Company note in question was proven in the bankruptcy as an obligation of Post. If it was, dividends paid on any amount reported thereon should be applied thereto; otherwise not. In the beginning, the purpose of the guarantee was to provide security above and beyond the William Post assets. It seems to have been understood that Post's property would not pay his debts in full, and that the bank's claims

would not be paid out of his property. For that reason the guarantee was demanded and given. Inasmuch as the case will have to be remanded, the true facts governing this situation can be developed and a proper decree entered.

We do not think the case has been developed to the extent that would warrant us in passing upon the rights of the parties, with respect to the removal of the timber from the land conveyed by the Pecks Run Coal Company to Koblegard. In the first place, evidence as to the value of this timber is unsatisfactory; it is insufficient upon which to base any finding as to such value. And in the second place, it is not clear from the record what the obligation of the parties was, in respect to protecting the vendor's lien by enjoining the removal of this timber, or otherwise. All of the parties, plaintiffs and defendants alike, knew that the timber was being removed; all of them wanted something done about it; yet no one acted. The idea advanced that there was doubt as to whether the vendor's lien protected the note held by the Central National Bank and the Trustees is, we think, untenable, for this reason: At the time this timber was removed, the two-year note assigned to Koblegard had not been paid. In fact, it was not paid until 1941, and was paid from the proceeds of the sale of the property in the suit instituted to enforce the vendor's lien. If proper steps had been taken, either to prevent removal of the timber, or to see that the value thereof was applied on the vendor's lien, that value would have reduced the Koblegard debt to that extent, and the amount remaining from the sale of the property in the vendor's lien suit, which would be paid to the Central National Bank, would have been that much greater, and the obligation of the plaintiffs correspondingly reduced. It cannot be questioned that the vendor's lien remained in force and effect as to the two-year note. As we appraise the situation, the question to be determined is whether or not by reason of the inactivity of all parties concerned, anyone should be charged with responsibility for failure to enjoin the removal of this timber, or to see

to it that the value thereof was applied on the vendor's lien. This point, we think, requires further development and we express no opinion thereon. The trial court in entering its decree, had a view of the case which did not require decision on this point. Our view of the case makes that point of the case important. We think we should first have a ruling of the trial court thereon.

We reverse the decree of the Circuit Court of Upshur County and remand the cause to further proceedings, not inconsistent with the opinions herein expressed.

*Reversed and remanded.*