TRACY N. SPENCER, JR.

*v.*

THE TRAVELERS INSURANCE COMPANY, *a Corporation*

(No. 12229)

Submitted September 24, 1963. Decided November 19, 1963.

112

CAPLAN, JUDGE, and CALHOUN, JUDGE, concurring.

*Poffenbarger & Bowles, Martin C. Bowles, John T. Poffenbarger,* for appellant.

*Jackson, Kelly, Holt & O'Farrell; W. T. O'Farrell, Robert L. Elkins,* for appellee.

BERRY, PRESIDENT:

This is an action based on an insurance policy obtained by the plaintiff, Tracy N. Spencer, Jr., from the defendant, The Travelers Insurance Company, a corporation. The insurance policy in question protected the plaintiff against claims for injuries received by persons while on his premises for which he would be liable, but excluded injuries to any employee. An injury was received by a cleaning woman, Bertha Smith, while she was cleaning the plaintiff's offices in South Charleston. The defendant insurance company denied liability under its policy, on the ground that the injured person was an employee, and the plaintiff settled the claim with the cleaning woman at a cost to him of $4303.61. This action, which was instituted in the Common Pleas Court of Kanawha County, resulted in a jury verdict in favor of the plaintiff against the defendant in the amount of $4303.61, upon which judgment was entered in the Common Pleas Court of Kanawha County on December 5, 1961.

Upon application to the Circuit Court of Kanawha County a writ of error and supersedeas to the judgment of the Common Pleas Court of Kanawha County was granted by the Circuit Court acting as an intermediate appellate court, and on August 23, 1962, the Circuit Court reversed the judgment of the Common Pleas Court, set aside the verdict of the jury, awarded the defendant a new trial and remanded the case to the Common Pleas Court. Upon application to this Court, a writ of error and supersedeas was granted on April 1, 1963, to the judgment of the Circuit Court of August 23, 1962. This case was submitted for final decision on arguments and briefs at the September, 1963 term of this Court.

The insurance policy in question was obtained several years before Bertha Smith was injured, from an agent for the Travelers Insurance Company who had an office near the plaintiff's office in South Charleston. When the plain-

tiff requested a professional liability coverage policy for his office the insurance company wanted to write coverage on all of his property along with the professional liability policy. Such coverage was issued by the Travelers Insurance Company for all of his property. There was no discussion had at the time of the issuance of the policy as to whether such policy would cover anyone working for the plaintiff. The agent for the defendant stated that they recommended the policies written so as to cover the plaintiff adequately and fully, as far as they could write the insurance.

The agent, Dallas Ogden, testified that when the accident was reported to him by the nurse employed by Dr. Spencer he thought that possibly such accident could be covered and later so told the doctor, but that the claim was turned over to the Travelers Insurance Company and the decision left up to it. All of the evidence relative to the conversations between the agent, Ogden, and Dr. Spencer, relative to the coverage in the insurance policy was objected to by the defendant as a violation of the parol evidence rule, but was admitted by the trial court for the consideration of the jury.

The main issue involved in this case is whether the cleaning woman was an employee of the plaintiff or whether she was an independent contractor. The provisions in the policy upon which this question rests read as follows:

## "INSURING AGREEMENTS

"1. Coverage. A—Bodily Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined.

## "DEFINITIONS OF HAZARDS

"Division 1. Premises—Operations. The ownership, maintenance or use of the premises, and

all operations necessary or incidental thereto.

"Division 2. Elevators. The ownership, maintenance or use of any elevator designated in the declarations.

"Division 3. Structural Alterations, New Construction, Demolition. Structural alterations which involve changing the size of buildings or other structures, new construction and demolition, if the accident occurs in the course of such operations at the premises by the named insured or his contractors or their sub-contractors.

"Division 4. Products—Completed Operations.

\* \* \* \* \*

## EXCLUSIONS

"This policy does not apply: . . .
(d) under divisions 1, 2 and 3 of the Definition of Hazards, to liability assumed by the insured under any contract or agreement;

\* \* \* \* \*

(j) under Coverage A, *to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured; . . .* " [emphasis supplied]

In May, 1959, while the plaintiff was away for a few days on vacation, his nurse and secretary, Mrs. Evelyn Leighty, engaged a cleaning woman, Mrs. Bertha Smith, to clean the walls and furniture in the plaintiff's office. The plaintiff had never seen the cleaning woman, although she had worked at the offices on other occasions over a period of two years, apparently having been engaged by the nurse. The plaintiff testified that his secretary had the authority to make arrangements for the cleaning of his offices and to pay for such cleaning out of his funds. He also stated that Mrs. Leighty had the authority to hire and fire the cleaning personnel, and in answer to a question as to whether she had the authority to control and direct the cleaning woman as to what and how to do the work, replied, "I suppose so". The plaintiff's secretary transported the cleaning woman to work, furnished her

with cleaning materials to be used in such work. Her testimony as to what was to be done is, "Well, Thursday we were going to wash walls and Friday I had thought we would do the furniture . . . ". After discussing this matter, Mrs. Leighty went to her desk to work on the books, leaving the cleaning woman standing "about three rooms away". Mrs. Leighty said she did not tell the cleaning woman how to do the work and did not exercise any supervision over her, "except I was there if she needed me". She further stated that the cleaning woman was not carried on the payroll as an employee, that no social security nor income tax was withheld, and that she was paid six dollars a day at the end of her day's work, but that if she completed the work before the full day's time, which she, Mrs. Leighty, thought she would do, she would be paid the day's pay of six dollars anyway. Soon after the cleaning woman went into the back room, she fell and injured herself. Mrs. Smith was transported to the hospital in an ambulance and Mrs. Leighty followed in her automobile.

It is the contention of the plaintiff that the cleaning woman was an independent contractor, and the Circuit Court erred in holding, under the evidence in this case, that she was an employee and that the policy in question excluded such coverage.

The defendant cross-assigned error in this Court asserting that it was error on the part of the trial court to admit parol evidence on the part of the agent for The Travelers Insurance Company, over its objection, relative to the injury received by the cleaning woman being covered, notwithstanding the clear provisions of the policy excluding such coverage.

The question as to whether a person is an employee or an independent contractor depends on the facts in any given case and all elements must be considered together. 27 Am. Jur., Independent Contractor, §5, page 485. Among the elements to be considered are the manner of selection of the person who is to do the work, how the person is to be paid for such work, the right to hire and to fire, and the right or power of control or supervision in connection with

the work to be done, but the most important of all is the last mentioned element, that of power of control or supervision over the manner of doing the work. If the right to control or supervise the work in question is retained by the person for whom the work is being done, the person doing the work is an employee and not an independent contractor. 42 C.J.S., Independent Contractor, page 638; 35 Am. Jur., Master and Servant, §3; 9 M.J., Independent Contractors, §3; *Kirkhart* v. *United Fuel Gas Co.*, 86 W. Va. 79, 102 S. E. 806; *Waldron* v. *Garland Pocahontas Coal Co.*, 89 W. Va. 426, 109 S. E. 729; *Greaser* v. *Appaline Oil Company*, 109 W. Va. 396, 155 S. E. 170; *Craft* v. *Pocahontas Corp.*, 118 W. Va. 380, 190 S. E. 687; *Meyn* v. *Dulaney-Miller Auto Co.*, 118 W. Va. 545, 191 S. E. 558; *Davis* v. *Fire Creek Fuel Co.*, 144 W. Va. 537, 109 S. E. 2d 144.

The determining factor to be considered in connection with this case or any other of like nature is whether the right of control or supervision over the work done existed in the person for whom the work was done, and not the use of such control or supervision. *Greaser* v. *Oil Co.*, supra; *Meyn* v. *Dulaney-Miller Auto Co.*, supra; *Davis* v. *Fire Creek Fuel Co.*, supra. In the case presented here, the evidence introduced during the trial of the case in the Common Pleas Court by the plaintiff clearly indicates that Mrs. Leighty, the secretary and office nurse for the plaintiff, had the authority vested in her by the plaintiff to select a cleaning woman to do the work in question, the authority to discharge such person, the authority to pay such person for the work performed out of the funds of the plaintiff and the power to control and supervise such work. This is shown from the fact that Mrs. Leighty selected the cleaning woman, transported her to work in her own automobile, furnished her with cleaning materials with which to perform the work, apparently told her to clean the walls in the back room on Thursday, advising her that the furniture was to be cleaned the following day. She also arranged to pay the cleaning woman's wages in the amount of six dollars a day, with the arrangement that if she completed the work before the end of the day she would still be paid the full day's pay of six dollars. Mrs.

Leighty stated that she did not exercise any degree of supervision over the cleaning woman, except that she was there if she was needed. It would therefore appear that under the evidence introduced during the trial in the trial court the relationship of the cleaning woman to the plaintiff was one of master and servant, and she could not be classified as an independent contractor without evidence of a stronger nature which would place her in such category.

The above mentioned facts present in the instant case are quite similar to the facts involved in *Waldron* v. *Garland Pocahontas Coal Co., supra,* in which case it was held in connection with the person involved that the relation of an independent contractor was not established, and that such person was an employee. As a general rule, where the evidence relating to an independent contractor or employee is conflicting, or if not conflicting, where more than one inference can be derived therefrom, the question is one of fact for jury determination, but where the facts are such that only one reasonable inference can be drawn therefrom, the question is one of law for the court to decide. 56 C.J.S., Master and Servant, §13; *Hicks* v. *Southern Ohio Quarries Co.,* 116 W. Va. 748, 182 S. E. 874; *Rice* v. *Builders Material Co.,* 120 W. Va. 585, 2 S. E. 2d 527; *American Telephone & Telegraph Company* v. *Ohio Valley Sand Co.,* 131 W. Va. 736, 50 S. E. 2d 884.

It is the contention of the plaintiff that Bertha Smith would come under the classification of a "casual employee" and therefore did not come under the exclusion clause contained in the insurance policy involved in this case. We are of the opinion that this point is not well taken, because the insurance policy involved in this case excludes "any employee" of the insured. In the cases cited in plaintiff's brief to support this contention, such as, *Daub, et al.* v. *Maryland Casualty Co.,* Mo. App. 148 S. W. 2d 58; *Braley Motor Co.* v. *Northwest Casualty Co.,* 184 Wash. 47, 49 P.2d 911; *Weiss* v. *Employers' Liability Assur. Corporation, Limited,* 226 N.Y.S. 732; *State ex rel. Maryland Casualty Co.* v. *Hughes,* 164 S. W. 2d 274, the wording of the policy does not have the same language as that con-

tained in the insurance policy involved in the instant case. The clause involved in the above cited cases was the insuring clause, not an excluding clause, and covered all persons "not employed" or "other than employees"; and in some instances the court said that the insuring clause was ambiguous and should be construed against the insurance company, that the language meant continuous employment and did not exclude casual employees.

The majority of the cases in which the policy excludes or fails to cover "any employee", such as we have in this case, clearly hold that it excludes any injury to "any employee", whether they are permanently employed, temporarily employed or casually employed, and in Workmen's Compensation cases, workers of the type here involved have been held "employees". *Pennsylvania Casualty Co.* v. *Elkins,* 70 F. Supp. 155; *State Farm Mutual Auto Ins. Co.* v. *Brooks,* 136 F. 2d 807; *Dorsey* v. *Kriloff, et al.,* 319 Ill. App. 116, 48 N. E. 2d 768; *Dial* v. *Coleman's Lunch,* 217 Iowa 945, 251 N. W. 33; *Halleran* v. *U. S. Fidelity & Guaranty Co.,* 134 N.Y.S. 2d 769, 206 Misc. 377; *Baugh* v. *Rogers,* (Cal. App.) 138 P. 2d 757, *T.I.M.E., Inc.* v. *Maryland Casualty Co.,* (C.C.A. Texas) 294 S. W. 2d 746.

The exclusion clause in the policy involved in this litigation is clear and unambiguous, wherein it excludes any coverage for injuries received by "any employee". It does not except from the exclusionary term "any employee" a domestic employee, casual employee, temporary employee or the like. See *Pennsylvania Casualty* v. *Elkins, supra.* Where the language of an insurance policy is clear and unambiguous, it will be given the plain meaning and effect of the language used. *Adkins* v. *Aetna Life Ins. Co.,* 130 W. Va. 362, 43 S. E. 2d 372. As was stated in *T.I.M.E., Inc.* v. *Maryland Casualty Co., supra,* the intent of a policy of this type is to protect the general public, not the employees.

It is the contention of the plaintiff that inasmuch as the local agent who wrote the insurance policy in question implied that the injury to Bertha Smith was covered, or that he thought it was covered, that the defendant insurance

carrier, The Travelers Insurance Company, would be estopped to deny that such injury was covered by the policy. The defendant, however, assigns cross-error with regard to this matter, and contends that it was error to admit such parol evidence in the trial of the case so as to vary the written contract, and that the Circuit Court erred in failing to so hold.

In the first place, the insurance agent who solicited the policies in question from the plaintiff did not tell the plaintiff when the policies were solicited and written that they would cover such injuries as involved in this case. The question as to anyone working for the plaintiff was not discussed at the time the policies were written, and it was only after Bertha Smith had been injured and discussion had with regard to the coverage that he stated that he thought the injury might be covered. No misstatements in any manner were made in connection with this matter at the time the policy was written. Therefore, under the facts and circumstances of this case, the doctrine of estoppel would not be applicable. 7 M.J., Evidence, §138, (Insurance Contracts); *Shinn* v. *West Virginia Insurance Company,* 104 W. Va. 353, 140 S. E. 61. However, such parol evidence used in an attempt to vary the provisions of the insurance policy involved herein, which are clear and unambiguous, was error. There is no contention that there was any fraud or mutual mistake in connection therewith, and it is only in such cases that parol evidence may be used in an attempt to vary a contract. 7 M.J., Evidence, §138; *Maupin* v. *Scottish Union & National Insurance Company,* 53 W. Va. 557, 45 S. E. 1003; *Central Trust Co.* v. *Virginia Trust Co.,* 120 W. Va. 23, 197 S. E. 12; *Ligon* v. *Cabot,* 123 W. Va. 400, 15 S. E. 2d 595; *Colerider* v. *Central National Bank of Buckhannon,* 125 W. Va. 760, 25 S. E. 2d 903; *Kanawha Banking and Trust Co.* v. *Gilbert,* 131 W. Va. 88, 46 S. E. 2d 225; *Shaffer* v. *Calvert Fire Insurance Company,* 135 W. Va. 153, 62 S. E. 2d 699; *Hartmann* v. *Windsor Hotel Co.,* 136 W. Va. 681, 68 S. E. 2d 34.

This is adequately covered in the first point of the syllabus in the case of *Shaffer* v. *Calvert Fire Insurance Company, supra,* in the following language: "Parol evidence

to contradict, add to, alter, enlarge, or explain a complete written agreement, which is clear and unambiguous, or to vary its legal effect, is inadmissible." It was therefore reversible error to admit such parol evidence in an attempt to change the clear and unambiguous provisions of the insurance contract, because the jury verdict may have been based on such evidence, which is, as we have held, inadmissible.

The judgment of the Circuit Court of Kanawha County, setting aside the verdict of the jury of the Common Pleas Court of Kanawha County, reversing the judgment thereon, and awarding the defendant a new trial, is affirmed.

*Affirmed.*

CAPLAN, JUDGE:

While I concur in the result reached in the decision of this case on the ground that the trial court erred in admitting parol evidence designed to contradict or alter the written contract of insurance, I am unable to agree, in view of the evidence adduced at the trial, that the defendant was entitled to a directed verdict. The decision holds, as a matter of law, that Bertha Smith was, at the time of her injury, an employee of the plaintiff, thereby bringing her within the exclusion set out in the insurance policy. I am of the firm opinion that the evidence does not warrant such peremptory holding.

As related in the majority opinion, it is the general rule that where evidence pertaining to whether one is an independent contractor or an employee is conflicting or, if not conflicting, more than one inference can be derived therefrom, the question is one of fact for jury determination, but where the facts are such that only one reasonable inference can be drawn therefrom, the question is one of law for the court to decide. In view of this general rule, it becomes pertinent to consider the elements which determine whether one is an independent contractor or an employee and to examine the testimony in relation thereto.

Perhaps the most important element to be considered in this regard, and the one principally relied upon in the

decision, is the right to exercise control over the person hired to do the work. The following questions propounded to Evelyn Leighty and the answers thereto given by her bear heavily on this matter:

"Q. Did you have any particular understanding with her what time she would go to work?

"A. She would go to work when we got there, I assume, since I brought her.

"Q. Did you tell her she had to start to work at a certain time?

"A. No.

"Q. Did you tell her what time she would quit for lunch?

"A. No, sir.

"Q. Did you tell her how many minutes or hours she would have off for lunch?

"A. No.

"Q. Did you tell her what time she would have to quit in the afternoon?

"A. No, sir.

"Q. Did you tell her what she would have to wear—

"A. No, sir.

"Q. (Continuing)—while in the office?

"A. No, sir.

"Q. Did you tell her how she would have to do the work?

"A. No, sir.

"Q. Did you exercise any degree of supervision over her whatsoever?

"A. No, except I was there if she needed me, and, no, I wasn't in the room with her and I didn't tell her how to do anything, no."

I believe that this testimony tends to show that the plaintiff did not have the right to control Bertha Smith in a manner that would classify her as an employee. At any rate, the evidence lends itself to more than one inference and, in my opinion, was properly submitted to the jury.

Another element pertinent to this question is the manner in which the person was to be paid for the work done. It is my belief that the following testimony given by witness Leighty shows a relationship of independent contractor rather than that of master and servant:

"Q.  Did you carry her on the payroll as one of the employees?

"A.  No, sir.

"Q.  Did you withhold social security?

"A.  No.

"Q.  Did you withhold withholding tax?

"A.  No, sir.

"Q.  How was she to be paid?

"A.  Six dollars a day.

"Q.  And when would you pay her?

"A.  At the end of the day.

"Q.  And was she a regular employee of Dr. Spencer?

"A.  No, sir.

\*   \*   \*

"Q.   And as I understand you, you paid her for the day?

"A.  Yes, sir.

"Q.  Six Dollars a day?

"A.  Yes, sir.

"Q.  And for what period of time was she working—was she to work in order to earn the six dollars?

"A. Until she finished and she knew what she was to do, and when she finished.

"Q. Suppose she had worked only an hour and you wouldn't have paid her six dollars for that?

"A. I never gave it any thought and she was slower than that and she never finished in an hour and I suppose until she had finished and if it had ran an hour, six dollars an hour.

"Q. And if she hadn't finished that day, I assume you would have had her back the following day to finish the job?

"A. Yes, sir, for something else. Yes, sir."

This evidence certainly creates an inference from which a jury may determine that Bertha Smith was to be paid for the specific job and was therefore hired on a contractual basis. She was to receive $6.00 for washing the walls. If she could finish that job satisfactorily in one hour she would receive six dollars. If it took her a day or two days she would still receive six dollars.

"In determining whether the relationship between parties is that of independent contractor or master and servant the measure of compensation is important, for where it is based upon time the workman is usually a servant, and where it is based upon a lump sum for the task he is usually a contractor." 9 M. J., Independent Contractors, Section 8. It occurs to me that the evidence conclusively shows that Bertha Smith was to be paid a lump sum for a specific task.

In the syllabus of *Hicks* v. *Southern Ohio Quarries Co.,* 116 W. Va. 748, 182 S. E. 874, the Court said: "In a case involving the relationship of independent contractor, although the facts may be undisputed, the issue should be submitted to the jury and not decided by the court as a matter of law unless the facts are such as would justify but one reasonable inference." See also 9 M. J., Independent Contractors, Section 11.

In my opinion the testimony in this case reflects a contractual relationship rather than that of employer and employee. Even if it falls short of that, the facts are such that they would justify more than one reasonable inference. I believe, therefore, that the trial court properly submitted this question to the jury and I respectfully disagree with the decision in this regard.

I am authorized by Judge Calhoun to say that he concurs with the views expressed herein.