MAX LEVINE

*v.*

PEOPLES BROADCASTING CORP., *and*
CARL MCKINNEY

(No. 12334)

Submitted January 26, 1965.     Decided February 23, 1965.

*George W. May, Alfred J. Lemley,* for appellant.

*Furbee & Hardesty, Russell L. Furbee, Thomas J. Whyte,* for appellees.

BROWNING, PRESIDENT:

Plaintiff, Max Levine, instituted this action in the Circuit Court of Marion County to recover damages to his premises, equipment and merchandise, situated on the first floor of a building in Fairmont, West Virginia, caused by water flowing from a broken water pipe in the rest room of the defendant, Peoples Broadcasting Corporation, hereinafter referred to as "Broadcasting," located on the second floor of the building. The water pipe was broken when the defendant, Carl McKinney, weighing 328 pounds, attempted to raise himself from the toilet seat by leaning on the washbasin. The jury returned a verdict for the plaintiff against both defendants in the sum of $4,090.00. A joint motion to set aside the verdict and enter judgment for the defendants

was sustained as to Broadcasting, to which action this Court granted an appeal on May 18, 1964.

The facts are not in dispute. In May, 1962, Broadcasting, feeling that there was a need in the community for barbershop singing, auditioned a quartet called the "Discords" of which McKinney was a member. The audition was made by tape recording which was thereafter played to the program director and the manager and resident vice president of Broadcasting, who found it to be of satisfactory quality for broadcasting over Broadcasting's radio station, WMMN, in Fairmont. A time period, 1:10 p.m. to 1:30 p.m., Mondays, was allotted to the quartet, which thereafter made weekly tape recordings at the station to be broadcast at that time. Spot commercials, unconnected with the quartet, were made before and after the program. The weekly tape recordings were made at a time convenient to the station announcer and the quartet. Broadcasting, in its discretion, could refrain from broadcasting any or all of the tape recordings made by the quartet or allocate them to a different time spot; designate the type of music they were to sing; terminate the arrangement at any time; and owned and operated the equipment used in making the tape recordings. No wages or other remuneration were paid by Broadcasting to the quartet, the members deeming the publicity thus obtained to be sufficient in this regard. This arrangement continued for almost one year.

On the night of April 11, 1963, the quartet made a tape recording to be played the following week, after which three of the members left the station. McKinney remained for the purpose of using the musical library of the station in order to find additional selections suitable for use by the group and, during this time, availed himself of the rest room facilities. In raising himself from the toilet seat, he rested his weight on the washbasin, pulling it from the wall and breaking the cold water pipe with the consequent flooding and damage to plaintiff's premises and merchandise.

As heretofore stated, a joint motion by the defendants to set aside the jury verdict, principally on the grounds that the evidence failed to disclose any agency or employer-

employee relationship between Broadcasting and McKinney, and, assuming such, that the negligent act of McKinney was without the scope of his employment, was sustained as to Broadcasting, the verdict against McKinney being allowed to stand.

This Court is aware of the great weight that is attached to the action of a trial judge in setting aside a verdict of a jury and granting a new trial to the parties. This is the 4th syllabus point of *Reese* v. *Lowry,* 140 W. Va. 772, 86 S. E. 2d 381: "Though a trial court's action in setting aside a verdict for the plaintiff is entitled to peculiar weight on writ of error, a trial court's order setting aside a verdict in plaintiff's favor, nevertheless, will be reversed by this Court on writ of error, when a consideration of all the evidence clearly shows that the case was properly one for jury determination." This Court has also held that upon a motion to set aside a verdict of a jury not only must the evidence of the prevailing party be most favorably considered, but all conflicting testimony and all inferences that may be drawn therefrom must be resolved in favor of the prevailing party. There are many decisions of this Court to that effect and the principle is so well established that it is not necessary to cite specific cases. Always it becomes a question of fact in the particular case. Upon the question of the relationship between McKinney and Broadcasting it is evident that it was either that of (a) employer-employee, (b) independent contractor, or (c) invitee. It is not seriously contended in this case that McKinney was only an invitee. However counsel for the appellee assert, and, we may assume, the trial judge agreed, that McKinney was an independent contractor. As is so often the case, we find little assistance in the prior decisions of this Court or elsewhere in determining the relationship that existed between these parties. We must therefore rely upon the evidence in this case for the answer.

It is clear that no money was paid directly by Broadcasting to McKinney and his group for the services which they performed. However, it seems also clear that both parties profited financially from that relationship. Mr. Fer-

rise, vice president and general manager of Broadcasting, was asked this question and made the following answer: "Q. What was the reason that the station allowed them to appear and broadcast? A. Well, principally, for two reasons; one to give them exposure on the air to our audience, and the other for a need of our station for that type of program." This witness also stated upon cross-examination that while there were no commercial announcements included in the taping of the Discords' program that there were commercials at the beginning and the end thereof. Mr. Finnerin, an employee of Broadcasting, testified that he approached, or was approached by, the McKinney group "about singing on the radio," thereafter a tape recording was heard by officials of the radio station who gave their approval as to the quality of the music of this group, and thereafter the group became a regular part of the broadcasting of the station, remaining so for almost a year. It is clear from the evidence in this case that Broadcasting exercised the option of determining whether a specific weekly recording of the McKinney group would appear the following Monday on the station and also reserved the privilege of using the recording at a different time or not using it at all that particular week. It is also clear from the evidence that McKinney and his group availed themselves of the privilege of making their recordings on the premises of Broadcasting and used Broadcasting's equipment for that purpose. It is true also, however, that they did some practicing elsewhere.

This Court is of the view that the relationship between these parties was not established by the evidence either way as a matter of law, but that it was a question of fact to be determined by a jury. It is our view that the trial court properly presented that question to the jury and that there was sufficient evidence of an employer-employee relationship existing between the parties for the jury to determine, as it did, that McKinney, at the time of the occurrence which resulted in the damage to the plaintiff, was an employee of Broadcasting. The applicable rule of law is well established in this jurisdiction to the effect that where the evidence relative to whether a particular person

is an independent contractor or employee is in conflict or even if it be not in conflict, where more than one inference can be drawn therefrom an issue is presented for jury determination. *Spencer v. Travelers' Insurance Co.,* 148 W. Va. 111, 133 S. E. 2d 735; *American Telephone & Telegraph Co. v. Ohio Valley Sand Co.,* 131 W. Va. 736, 50 S. E. 2d 884; *Rice v. Builders Material Co.,* 120 W. Va. 585, 2 S. E. 2d 527; *Hicks v. Southern Ohio Quarries Co.,* 116 W. Va. 748, 182 S. E. 874.

The second question presented has given this Court little trouble. Again we believe it was a jury question as to whether the employee McKinney was acting within the scope of his employment at the time he did the negligent act which resulted in damage to the plaintiff. We believe the court also properly submitted that issue to the jury in the giving of plaintiff's instruction No. 9, to which, incidentally, there was no objection. That instruction is as follows:

> "The Court instructs the jury that if you believe from the evidence that Carl McKinney was acting within the scope of his employment and about his employer's business, the jury are instructed that a mere deviation or departure from the usual and ordinary course and activities of this employment, even to accomplish some private purpose of his own in connection with the business of his employer, does not of itself, as a matter of law, relieve the employer of liability. Whether such departure or deviation is sufficient to relieve the defendant of responsibility for McKinney's act is a question of fact to be determined by the jury from the facts and circumstances proved in this case."

This Court has laid down the rule in workmen's compensation cases that an employee is within the scope of his employment as provided by the act when he is administering to his own health and comfort if that be reasonably necessary to his employment. *Archibald v. Workmen's Compensation Commissioner,* 77 W. Va. 448, 87 S. E. 791. While counsel for the appellee contended that a different rule should be applied in a tort action, it would appear that courts of other jurisdictions have held otherwise. For ex-

ample, in *DeMirjin* v. *Ideal Heating Corporation* (Cal., 1954), 278 P. 2d. 114, the decision of this Court in the *Archibald* case was cited as authority in applying this principle in a tort action. See also *Freehill* v. *Consumers Company,* 243 Ill. App. 1, and *J. C. Penny Co., Inc.* v. *McLaughlin,* 137 Fla. 594, 188 So. 785. In *Cochran* v. *Michaels,* 110 W. Va. 127, 157 S. E. 173, the following excerpt from Mechem on Agency, 2d Ed., § 1879, was quoted with approval: ". . . a servant is acting within the course of his employment when he is engaged in doing, for his master, either the act consciously and specifically directed or any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act or a natural, direct or logical result of it. If in doing such an act, the servant acts negligently, that is negligence within the course of the employment." This testimony of the defendant McKinney was uncontradicted: "Q. After the tape was concluded and you had finished making the tape, what did the other three members of the group do. A. They left to go home. Q. What did you do? A. I stayed at the station to get some more material or something we could work up. Q. Did you get it? A. Yes, sir. Q. Then what did you do? A. It was during this time that I went to the bathroom."

It is the decision of this Court that the trial court properly submitted to the jury the questions of whether an employer-employee relationship existed between the parties and whether the act of McKinney which caused the plaintiff's damage was within the scope of his employment and, the jury having determined both questions in favor of the plaintiff, that the trial court erroneously invaded their province in setting aside their verdict. The action of the Circuit Court of Marion County in setting aside the verdict and judgment against the defendant Broadcasting is reversed and the verdict and judgment entered on November 19, 1963 reinstated in its entirety.

*Reversed; verdict and judgment reinstated.*