488 S.E.2d 429

**Brenda PENNINGTON, Executrix of the Estate of William Pennington, Appellant**

v.

**Robert S. BEAR, D.O.; Bluefield Regional Medical Center, Inc., a Non–Profit West Virginia Corporation; Bluefield Health Systems, Inc., a Non–Profit West Virginia Corporation; and Professional Imaging, Inc., a West Virginia Corporation, Appellees.**

No. 23869.

Supreme Court of Appeals of West Virginia.

Submitted April 23, 1997.

Decided May 9, 1997.

Dissenting Opinion of Chief Justice Workman
July 14, 1997.

Rehearing Refused July 15, 1997.

Michael F. Gibson, Princeton, for Appellant.

William L. Mundy, Mundy & Adkins, Huntington, for Appellee Bear.

Wayne L. Evans, Katz, Kantor & Perkins, Bluefield, for Appellees Bluefield Regional Medical Center, Inc., and Bluefield Health Systems, Inc.

Kelly D. Ambrose, Jacobson, Maynard, Tuschman & Kalur Charleston, for Appellee Professional Imaging, Inc.

MAYNARD, Justice:

The appellant, Brenda Pennington, appeals the November 17, 1995, Order of the Circuit Court of Mercer County, West Virginia, granting the motion for summary judgment of appellee, Professional Imaging, Inc., on the ground that her claim for the wrongful death of her husband was time-barred.

On January 4, 1993, William Pennington, the husband of appellant, Brenda Pennington, was accepted as a patient at Bluefield Regional Medical Center (BRMC) and was treated by Robert S. Bear, D.O., for various symptoms of illness. Certain radiographic, imaging, and other diagnostic studies were

performed on Mr. Pennington. On January 14, 1993, while still a patient at BRMC, Mr. Pennington died. An autopsy performed on January 15, 1993, attributed the cause of death to a pulmonary embolus.

On January 13, 1995, the appellant filed a wrongful death action against BRMC, Bluefield Health Systems (BHS),[1] and Robert S. Bear, D.O. arising from the death of her husband. In her complaint, the appellant alleged that BRMC, BHS, and Dr. Bear caused the death of her husband by failing to properly diagnose the symptoms of acute massive pulmonary embolism, failing to perform a CT scan of the chest due to mechanical failure of radiologic equipment owned and operated by BRMC, and failing to promptly refer Mr. Pennington to nearby radiologic facilities capable of performing and interpreting CT scans.

On March 20, 1995, the appellant amended her complaint to include Professional Imaging, Inc. as a defendant. At the time of the events at issue, Professional Imaging had a contract with BRMC wherein Professional Imaging was solely responsible for providing all radiology services available at BRMC. In her amended complaint, the appellant alleged that Edward Aycoth, M.D., an employee of Professional Imaging, performed and interpreted medical imaging studies on Mr. Pennington, "including but not limited to CT scans and lung scans," for the purpose of clarifying the existence of a pulmonary embolus. The appellant stated that Dr. Aycoth interpreted a lung scan as showing a low probability of pulmonary embolus when, if properly read, it should have shown a high degree of probability of a pulmonary embolus.

On May 31, 1995, Professional Imaging filed a motion for summary judgment contending that the appellant was barred from adding it as a defendant more than two years after Mr. Pennington's death. The appellant responded that either the discovery rule applied to the wrongful death statute, thus extending the two-year limitations period, or there was evidence of fraud, misrepresentation or concealment of facts that were material to the appellant's discovery of the injury to her husband.

A hearing was held in the Circuit Court of Mercer County on July 14, 1995, after which the court found that an evidentiary hearing was necessary in order to determine the facts as submitted. At the October 6, 1995 evidentiary hearing, the appellant offered evidence showing her inability to obtain possession of the lung scan performed on her husband by Professional Imaging. The evidence was undisputed that the appellant's lawyer attempted to obtain the lung scan from BRMC from October, 1994 until March 17, 1995, when BRMC ultimately produced the lung scan. There was much disputed evidence, however, concerning the reason for this delay. The appellant contends, and BRMC denies, that BRMC fraudulently concealed the film of the lung scan. The appellant produced no evidence that Professional Imaging was involved in any attempt to conceal the film of the lung scan.

The circuit court found that even if it assumed the allegations of fraud against BRMC to be true, these allegations could not be imputed to Professional Imaging. The circuit court concluded that the appellant's complaint against Professional Imaging was filed outside the two-year period for filing such actions and that there was no issue of material fact to justify the tolling of the limitations period. The court, therefore, granted Professional Imaging's motion for summary judgment and dismissed it from the action with prejudice. It is from this ruling that the appellant appeals to this Court.

First, we note that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Furthermore, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty And Surety Company v. Federal Insurance Company Of*

1. In her complaint the appellant alleges that BRMC is a subsidiary, wholly owned and controlled by BHS.

*New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Accordingly, "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 4, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). With this in mind, we will now examine the case before us.

The applicable period of limitations for bringing a wrongful death claim is found in W.Va.Code § 55-7-6(d) (1992) which states that "[e]very such action shall be commenced within two years after the death of such deceased person[.]" In *Miller v. Romero,* 186 W.Va. 523, 413 S.E.2d 178 (1991) this Court discussed at great length the limitations period in a wrongful death action. There we were faced with the following certified question:

> In a medical malpractice case, is the wrongful death statute of limitations tolled by the allegation of fraudulent concealment on the part of the defendant and/or failure on the part of the plaintiff to discover the cause of the decedent's death?

*Miller,* 186 W.Va. at 524, 413 S.E.2d at 179. W.Va.Code § 55-7B-1, *et seq.* (1986), known as the Medical Professional Liability Act, addresses both malpractice actions and actions involving death. *Miller,* 186 W.Va. at 527, 413 S.E.2d at 182.

W.Va.Code § 55-7B-4(a) (1986) provides, in relevant part, that a cause of action pursuant to the Act "must be commenced within two years of the date of such injury, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs[.]" In addition, W.Va.Code § 55-7B-4(c) (1986) states that this period of limitation "shall be tolled for any period during which the health care provider or its representative has committed fraud or collusion by concealing or misrepresenting material facts about the injury." In *Miller* we concluded that "the omission of the word 'death' from W.Va.Code § 55-7B-4 must mean that the section applies only to

injury cases and the legislature intended W.Va.Code § 55-7-6 to remain the applicable provision for limitations of actions involving wrongful death." *Miller,* 186 W.Va. at 527, 413 S.E.2d at 182.

■ Our discussion did not end there, however. We added that,

> [W]e are troubled by the potential inequity in cases where a physician actively conceals malpractice from the decedent's representatives. Such fraud effectively abrogates the purpose of the statutory two-year limitation period in the wrongful death action and creates an intolerable situation. If this Court was (sic) to rule that the statute barred a suit filed after the two-year period had elapsed where a physician lied to the decedent's family or representative about the cause of death, then the physician would be free if he could mislead the family until after the two years had run. Such a result is contrary to both the remedial purpose of this statute and the public policy of this State to provide equity for those injured by the negligence of another.

*Id.* Accordingly, we concluded that "[t]he two-year period which limits the time in which a decedent's representative can file suit is extended only when evidence of fraud, misrepresentation, or concealment of material facts surrounding the death is presented." Syllabus Point 2, *Miller v. Romero, supra.*

In the present case, the appellant contends that, construing the evidence in a light most favorable to the appellant, there is ample evidence that BRMC fraudulently concealed the lung scan until after the running of the limitations period, and that BRMC's alleged fraudulent concealment should be imputed to Professional Imaging in order to toll the two-year limitations period. The appellant concedes that, as a general rule, an act that tolls the running of the statute of limitations must be that of the defendant, but states that some courts have found an exception to this rule when a defendant is in privity with or occupies an agency relationship with someone who fraudulently conceals a cause of action. In such a situation, the concealment would toll the running of the limitations period against both parties. According to the

appellant, such a situation exists under the facts of this case.

This is an issue of first impression for this Court. As noted above, the West Virginia Legislature established a two-year statutory limitation on a cause of action for the wrongful death of a person. In *Miller* we rendered a narrow exception to the two-year period by extending it when there is evidence of fraud, misrepresentation, or concealment of material facts surrounding the death. In *Harrison v. Davis*, 197 W.Va. 651, 660, 478 S.E.2d 104, 113 (1996) we declined to broaden this exception. *Harrison* concerned the issue of whether misrepresentations and concealment of material facts by persons other than the named defendants tolled the statutes of limitations for personal injury and wrongful death claims. There we concluded that "[w]hile the *Miller* holding does not specifically designate the defendant as the party responsible for the misrepresentation, the analysis preceding this *limited exception* suggests the defendant is the responsible party[.]" *Harrison*, 197 W.Va. at 661, 478 S.E.2d at 114 (Italics added). In addition, we stated:

> An extension of the statutory filing period for a wrongful death claim requires an affirmative act of fraud, misrepresentation, or concealment of material facts by named defendants. Bare assertions that third parties misrepresented the decedent's cause of death, coupled with conclusory allegations that named defendants may or may not have contributed indirectly to those misrepresentations, do not rise to the level of affirmative actions by the named defendants as contemplated by Syllabus Point 2 of *Miller v. Romero*, 186 W.Va. 523, 413 S.E.2d 178 (1991).

Syllabus Point 5, *Harrison v. Davis, supra.* While not dispositive of the issue before us, *Miller* and *Harrison* suggest the great amount of caution this Court has exercised in extending the two-year limitations period for wrongful death actions established by the legislature.

As noted above, the appellant urges us to impute BRMC's alleged fraudulent concealment to Professional Imaging based on the relationship between the two parties.

This we decline to do under the facts currently before us. A review of the contract between BRMC and Professional Imaging reveals that the two parties are separate entities, with Professional Imaging providing all radiology services dispensed by BRMC. It is notable that the contract between the two parties did not provide that one party would indemnify the other for any losses. In addition, there were no allegations that Professional Imaging participated in or had any knowledge of the alleged fraudulent concealment of BRMC. Under these facts, we believe that it would be unfair to impute BRMC's alleged fraudulent concealment to Professional Imaging.

We emphasize that we are not stating that fraudulent concealment for the purpose of tolling the statute of limitations in a wrongful death action can never be imputed to a named defendant who did not actually commit the act of fraudulent concealment. However, we decline to establish a broad rule in this area. We hold, instead, that evidence of fraudulent concealment of one defendant will not be imputed to another defendant for the purpose of tolling the limitations period in a wrongful death action solely on the basis of privity of contract between the two defendants. Instead, we think trial courts should make this determination on a case by case basis after considering such factors as the nature of the contract between the defendants and whether the defendant who did not commit the fraudulent act nevertheless had knowledge of such an act committed by the other defendant.

Second, the appellant contends that the circuit court erred in conducting an evidentiary hearing to determine the conflicting factual issues presented by Professional Imaging's motion for summary judgment.

Although the appellant's argument on this point is unclear, the appellant appears to maintain that the circuit court's October 6, 1995 evidentiary hearing, held pursuant to BRMC's and Professional Imaging's motions for summary judgment, infringed on the jury's exclusive duty to make factual determinations. The appellant relies, in part, on *Stemple v. Dobson*, 184 W.Va. 317, 321, 400 S.E.2d 561, 565 (1990) where this Court con-

cluded, "where a cause of action is based on tort or on a claim of fraud, the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury."

■ We believe that the circuit court's evidentiary hearing was not improper. We note that *Stemple* is inapposite here since this case does not concern the application of the discovery rule. Also, there was no issue that the two-year period of limitations had run prior to the appellant's filing of her amended complaint against Professional Imaging. Once Professional Imaging moved for summary judgment based on this fact, the burden of production shifted to the appellant to either "(1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure." Syllabus Point 3, in part, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). At the evidentiary hearing, the appellant produced evidence of fraudulent concealment only against BRMC. Thereafter, the circuit court concluded that even if the appellant's allegations of fraudulent concealment against BRMC were true, these allegations could not be imputed to Professional Imaging. Because we find, after a review of the record, that the purpose of the evidentiary hearing was to determine whether there was a genuine issue for trial, we find that the circuit court did not exceed its function.

Last, the appellant claims that the circuit court's entry of summary judgment was premature in that it deprived her of the opportunity to engage in appropriate discovery. The appellant notes that prior to the evidentiary hearing, appellant's counsel filed an affidavit concerning the need to take additional depo-

sitions pursuant to West Virginia Rule of Civil Procedure 56(f).[2] The appellant maintains that the circuit court's summary judgment order on behalf of Professional Imaging was precipitous and in error because "it is certainly conceivable that additional discovery could have disclosed additional facts which would have created a jury issue as to whether for the distinct statutory function of releasing records of [Professional Imaging's] studies, BRMC was [Professional Imaging's] agent, thus facilitating the imputation of fraud from BRMC to [Professional Imaging]."

■ This Court adheres to the general principle "that summary judgment is appropriate only after the opposing party has had 'adequate time for discovery.'" *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 61, 459 S.E.2d 329, 338 (1995) (Citations Omitted). We have also stated that "a decision for summary judgment before discovery has been completed must be viewed as precipitous." *Board of Education of the County of Ohio v. Van Buren and Firestone, Arch., Inc.*, 165 W.Va. 140, 144, 267 S.E.2d 440, 443 (1980). After a careful review of the record in this case, we believe that the appellant had adequate time for discovery and that the summary judgment order was not precipitous, for the reasons set forth below.

First, we believe that the appellant had adequate time in which to conduct discovery. At the evidentiary hearing, the appellant testified that she hired counsel pursuant to instituting the underlying action in the summer of 1994. The evidentiary hearing was held on October 6, 1995. From the time that counsel was hired by the appellant and became acquainted with the relevant facts of this case, the possible defendants to a wrongful death action were apparent. From that time until the evidentiary hearing, the appellant could have conducted discovery on the nature of the relationship between BRMC and Professional Imaging. The appellant

---

**2.** West Virginia Rule of Civil Procedure 56(f) states:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may

refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

did, after all, manage to discover the terms of the contract between BRMC and Professional Imaging within this time period. Therefore, we believe the appellant was afforded an adequate time period in which to conduct discovery.

In addition, in his affidavit in support of the motion to reconsider the circuit court's order scheduling an evidentiary hearing, appellant's counsel stated that additional discovery "including but not limited to the discovery depositions of Dr. Robert Bear, D.O., employees of Bluefield Regional Medical Center's x-ray file room, Dr. Edward Aycoth and representatives of both the West Virginia Workers' Compensation Commission and the Charleston office of the Division of Coal Mine Workers' Compensation Programs of the Department of Labor" was needed to clarify the issues raised in BRMC's motion to dismiss[3] and Professional Imaging's motions for summary judgment. The transcript of the October 6, 1995, evidentiary hearing reveals that two employees of BRMC's radiology department file room testified and were cross-examined by appellant's counsel. Also, the transcript shows that appellant's counsel introduced as an exhibit the affidavit of a claims examiner with the Division of Coal Mine Workers' Compensation of the United States Department of Labor. Therefore, prior to the circuit court's summary judgment order, appellant's counsel had access to several of the parties he sought to depose in his request for additional discovery. Of those remaining on the list of requested affidavits or depositions, Dr. Robert Bear, D.O., who was apparently the treating physician of the appellant's husband, and representatives of the Workers' Compensation Commission would presumably have no knowledge of a legal ·relationship between BRMC and Professional Imaging. As noted above, appellant's counsel had ample time to depose Dr. Edward Aycoth, an employee of Professional Imaging, prior to the evidentiary hearing. We also note that in his motion to reconsider the circuit court's order scheduling an evidentiary hearing and the accompanying affidavit, appellant's counsel fails to explain why

additional discovery was necessary. Considering the above facts in light of the standards set forth in *Williams* and *Board of Education of the County of Ohio,* we find that the appellant had adequate time for discovery, and that the decision for summary judgment was not precipitous.

Finally, we should note here that we find the facts of this case troubling. The reason for the appellant's inability to obtain the lung scan from BRMC from October 1994 until March 1995 is in dispute, and it is beyond our province in this case to comment on the validity of the allegations of fraud made by the appellant against BRMC. What is not in dispute, however, is that the appellant was unable to obtain a potentially crucial piece of evidence for about a five-month period pursuant to the filing of her wrongful death action.

In conclusion, we find that the appellant failed to produce evidence mandating that the alleged fraudulent concealment of BRMC be imputed to Professional Imaging for the purpose of tolling the running of the period of limitations in her wrongful death action. Also, we conclude that the evidentiary hearing conducted by the circuit court in consideration of Professional Imaging's motion for summary judgment was merely for the purpose of determining whether a genuine issue of fact existed and, therefore, was not improper. Finally, we find that the appellant had an adequate opportunity to conduct appropriate discovery and that her counsel's affidavit in support of her motion to reconsider the scheduling of an evidentiary hearing on the motion for summary judgment failed to explain why any additional discovery was necessary. It is undisputed that the appellant filed her amended complaint against Professional Imaging after the two-year period of limitations set forth in our Wrongful Death Statute. The appellant has failed to produce evidence that would toll the running of this two-year period. For the foregoing reasons, we affirm the order of the Circuit

---

**3.** In its November 17, 1995, order, the circuit court held BRMC's motion to dismiss in abeyance pending further evidentiary development.

Court of Mercer County granting summary judgment in favor of Professional Imaging.

Affirmed.

WORKMAN, Chief Justice, dissenting:

I respectfully dissent from the majority because an unjust and unnecessary result has been reached that clearly violates established principles of public policy that favor recovery where persons are injured by the negligence of others. The majority properly recognized the exception established in *Miller v. Romero,* 186 W.Va. 523, 413 S.E.2d 178 (1991), that permits a tolling of the two-year period required for filing wrongful death actions pursuant to West Virginia Code § 55–7–6 (1994) "where evidence of fraud, misrepresentation, or concealment of material facts is presented." 186 W.Va. at 528, 413 S.E.2d at 183. The majority goes astray, however, in reaching the conclusion that the fraud or concealment must have been that of the entity whom the plaintiff seeks to join as a party.

The majority acknowledges that "at the evidentiary hearing, the appellant produced evidence of fraudulent concealment ... against BRMC." While the circuit court correctly concluded that the fraud allegedly committed by BRMC could not be imputed to Professional Imaging, the law does not require such imputation. As Justice Cleckley elucidated in *Harrison v. Davis,* 197 W.Va. 651, 478 S.E.2d 104 (1996), "an extension of the statutory filing period for wrongful death claims requires an affirmative act of fraud, misrepresentation, or concealment of material facts by the *named defendants." Id.* at 661, 478 S.E.2d at 114 (emphasis supplied). That is exactly what is alleged to have occurred in this case. BRMW, a named defendant, is the entity alleged to have committed fraudulent acts of concealment with regard to the lung scan.

What the majority has sanctioned is exactly the type of conduct that this Court in *Miller* sought to protect against. *Miller* anticipated those cases where, through fraudulent acts of concealment, a plaintiff could be denied a cause of action that he/she would otherwise have had. In this case, the alleged acts of BRMW in concealing the existence of a lung scan have served to prevent Appellant from including Professional Imaging as a defendant and permitting Appellant to proceed on her theory that an employee of Professional Imaging, Dr. Aycoth, failed to properly read a lung scan showing a high degree of probability of pulmonary embolus. The exception crafted in *Miller* has thus been stripped of its very purpose—to avoid the "intolerable situation" created by the "conceal[ment of] malpractice from the decedent's representatives." 186 W.Va. at 527, 413 S.E.2d at 182. Neither *Miller* nor *Harrison* indicate that the fraud has to have been committed by the person or corporation whom the plaintiff is attempting to include as a party under tolling principles.

We note additionally that although the record does not reflect that an indemnification agreement exists between BRMW and Professional Imaging, in other cases the existence of an indemnification agreement would result in an obvious benefit to the concealing party where an indemnitee is prevented from being added as a party through acts similar to those alleged in this case. Such could also be true in the instant case. For example, if the plaintiff/Appellant proceeds against BRMW on the theory of negligent selection of Professional Imaging, or some other theory of agency, then it is possible, under principles of joint and several liability, that the hospital could also benefit by the refusal to permit Appellant to amend her complaint to name Professional Imaging as a defendant.

Lastly, in a scenario such as the one presented here, under the majority's interpretation, the plaintiff should be able to explore a civil action for damages for fraud. To deny her the opportunity to develop the facts surrounding the possible fraud and to include all the parties who participated directly or indirectly in that fraud would wrongly result in shielding potentially responsible entities from liability for the critical acts of concealment at issue. After all, the impetus for this Court's ruling in *Miller* was to prevent acts of concealment from being used to bar malpractice suits in the interest of advancing the " 'strong public policy of this State that persons injured by the negligence of another should be able to recover in tort.' " *Id.* (quoting *Paul v. Nat'l Life Ins. Co.,* 177

W.Va. 427, 433, 352 S.E.2d 550, 556 (1986)). The result reached by the majority clearly does not serve this longstanding laudable objective.

I am authorized to state that Justice STARCHER joins in this dissenting opinion.