558 S.E.2d 336

**MOUNTAIN LODGE ASSOCIATION, an Unincorporated Association, Plaintiff Below, Appellant,**

v.

**CRUM & FORSTER INDEMNITY COMPANY, a Corporation, and United States Fire Insurance Company, a Corporation, Defendants Below, Appellees.**

No. 29289.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2001.

Decided Dec. 7, 2001.

Dissenting Opinion of Justice Davis Dec. 10, 2001.

Larry O. Ford, Meyer & Ford, Anne E. Shaffer, Charleston, for the Appellant.

Erik T. Engle, Pullin, Knopf, Fowler & Flanagan, Charleston, for the Appellees.

ALBRIGHT, Justice.

Mountain Lodge Association (hereinafter "Appellant" or "MLA"), appeals the August 28, 2000, final order of the Circuit Court of Pocahontas County awarding summary judgment in favor of Crum & Forster Indemnity Co. (hereinafter "Crum") and United States Fire Insurance Company (hereinafter "U.S. Fire" or collectively "Appellees"), in a civil action filed by Appellant seeking a declaratory judgment to determine coverage for "employee dishonesty" under a commercial general liability policy and seeking recovery for alleged employee dishonesty and alleged bad faith on the part of Appellees for denying coverage under the policy. Appellees Crum and U.S. Fire denied coverage under that insurance policy because Appellees claim that the allegedly dishonest person was an independent contractor and not an employee of MLA. The lower court agreed and entered summary judgment for Appellees after also considering a cross-motion for summary judgment filed by Appellant. Because we find Appellees are not entitled to summary judgment as a matter of law, we reverse and remand for proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

MLA, an unincorporated association, operates Mountain Lodge, which is located at Snowshoe in Pocahontas County, West Virginia. At some time prior to May 1996, MLA decided to renovate its condominium complex. It appears that MLA originally intended to utilize a general contractor to accomplish at least some of the renovations, but elected, on or about May 16, 1996, to alter its approach. Mountain Lodge proposed to act as general contractor for the "exterior rehabilitation project rather than rely on a commercial general contractor." According to MLA board meeting minutes dated May 16, 1996, and approved July 22, 1996, the plan was for the board to hire Norman D. Tyler to "work for" the "board as their construction manager." Mr. Tyler had worked for the board prior to May 16, 1996, in a different capacity.

Later, but prior to starting these renovations, MLA purchased from Crum & Forster, through Accordia, Inc., a commercial general liability policy of insurance issued by U.S. Fire, which included an employee dishonesty section intended to protect the insured from theft of property or money by employees. Subsequently, a letter dated November 13, 1996, was prepared, referring to a "professional services contract" for "N. D. Tyler," which, with its attachments, outlined duties and compensation for Mr. Tyler with respect to the renovations. Copies of that letter, included in the record with some of its attachments, are addressed to Sam McKeen, President, Mountain Lodge Association, and are signed by Mr. McKeen, but not by Mr. Tyler. The documents in the record also disclose a plan to pay Mr. Tyler for his services in a series of installments, plus a possible bonus based on savings in costs effected by Mr. Tyler.

It is not clear from the record when Mr. Tyler actually began acting as "construction manager," but the record does disclose a representation by Mr. McKeen that the project was scheduled to be accomplished between January and September, 1997, and that Mr. McKeen expected Mr. Tyler's services to be "on-site."

There is also a reference in the record to a three-way telephone conversation on March 26, 1997, among Mr. Tyler, Mr. McKeen and Janice Peacock, a representative of Accordia, during which Mr. McKeen asserts that he verified to Accordia that Mountain Lodge had an employment relationship with Mr. Tyler. Specifically, MLA allegedly sought, and then obtained assurance from Accordia, based on Mr. Tyler's status as an employee, that it would not be necessary to acquire a separate bond to protect MLA against any dishonesty by Mr. Tyler, as it would be if he was an independent contractor.

After the renovations began in 1997, MLA Board President Sam McKeen sent Mr. Tyler at least three memos regarding aspects of Mr. Tyler's work and the progress of the renovations. Those memos included demands that Mr. Tyler "[i]mmediately return" various amounts of money which Mr. Tyler had allegedly over-billed for work and mate-

rials, that he provide justification for certain invoices, and that he complete installation of certain trim pieces, as well as other matters. The last memo in the record, dated December 3, 1997, requested that Mr. Tyler perform specified tasks, demanded reimbursement to MLA of $53,000.00 which Mr. Tyler had allegedly misappropriated, and announced the termination of his services by MLA. Those memos suggest that, in addition to serving as "construction manager," Mr. Tyler furnished certain materials and labor for the renovation project through a separate business entity in which he had an interest or was the owner.[1]

When Mr. Tyler did not make the reimbursement requested, MLA filed a proof of loss with Appellee, Crum & Forster, alleging employee dishonesty by Mr. Tyler in the amount of $53,616.00. Crum & Forster responded by requesting copies of MLA's tax forms relating to Mr. Tyler's employment. MLA had no such records because it had neither withheld income taxes from, nor paid workers' compensation premiums for, Mr. Tyler. Crum & Forster denied the claim by letter dated August 10, 1998, stating that a "key element in determining the status of the actor is whether or not Mountain Lodge Association paid taxes on behalf of the actor." Citing the definition of "employee" in the policy, Crum & Forster concluded that "there is no evidence to support that Norman D. Tyler was, in fact, an employee" and closed the claim.

Later that month, Accordia sent a detailed letter to Crum & Forster in support of MLA's claim, and Crum & Forster reopened the claim. MLA and Crum & Forster exchanged correspondence in which MLA argued that Mr. Tyler's position was similar to that of its "general manager" position. Crum & Forster again denied the claim. In the last letter, dated November 4, 1998, Crum & Forster again cited the fact that taxes were withheld from, and workers com-

pensation paid on, the "general manager" position, but not with respect to Mr. Tyler. The letter made no comment regarding similarities between the two positions and recited that no additional evidence had been presented in support of the MLA claim that Mr. Tyler was an employee.

Following this denial, MLA filed its Complaint in this action on October 9, 1999, seeking a declaratory judgment on the issues of coverage and other relief mentioned above. After Appellees filed an answer and after some initial discovery, MLA filed a motion for summary judgment, followed by the filing of a cross-motion for summary judgment by Appellees. The circuit court made initial findings by an order entered June 28, 2000, and its final summary judgment order was entered August 28, 2000. The court below determined that the subject insurance policy afforded MLA no coverage for the alleged defalcations of Mr. Tyler. Essentially, the trial court found that there were no disputed facts, that MLA had failed to retain control over Mr. Tyler and that Appellees were therefore entitled to judgment as a matter of law. It is from that August 28, 2000, order granting Appellees summary judgment that MLA appeals.

## II. STANDARD OF REVIEW

■■ This case involves the granting of summary judgment in a declaratory judgment action. Our focus here is upon whether summary judgment was properly granted, although we note that the standard of review for both types of judgments is the same. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "A circuit court's entry of a declaratory judgment is reviewed *de novo*." Syl. Pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995).

---

1. Both parties recognized some confusion regarding the relationship of Mr. Tyler to a company, USA Multifamily Group, in which he or his son or both owned some interest, to which MLA made some payments at the direction of Mr. Tyler. While further factual development may be needed to achieve clarity regarding these matters, it appears that USA Multifamily Group may

have acted as a subcontractor for certain materials and services furnished for the MLA project at a cost in addition to Mr. Tyler's compensation as "construction manager." The record does not disclose whether any such dealings between MLA, its "construction manager" and USA Multifamily Group were contemplated by MLA and Mr. Tyler.

## III. DISCUSSION

The question with which we must grapple is whether Appellees here, Defendants below, were entitled to summary judgment as a matter of law. That question depends on whether the record below supports the conclusion of the trial court that the undisputed facts, without further inquiry, show that Appellant did not have the *right* to control the manner in which Mr. Tyler performed his duties as "construction manager" for Appellant. If Appellant had such a right of control, Mr. Tyler was an employee covered by the insurance policy at issue in this case. If Appellant did not have that right of control, Mr. Tyler was an independent contractor not covered by the insurance policy.

■ This Court has expressed the underlying law which distinguishes an employee from an independent contractor in two contrasting, but consistent, leading cases. We have stated the roles as follows:

" 'If the right to control or supervise the work in question is retained by the person for whom the work is being done, the person doing the work is an employee and not an independent contractor, and the determining factor in connection with this matter is not the use of such right of control or supervision but the existence thereof in the person for whom the work is being done.' Point 2, Syllabus, *Spencer v. Travelers Insurance Company,* 148 W.Va. 111, [133 S.E.2d 735 (1963) ]."

Syl. Pt. 3, *Myers v. Workmen's Compen. Comm'r,* 150 W.Va. 563, 148 S.E.2d 664 (1966).

■ In syllabus point one of *Spencer v. Travelers Insurance Company,* 148 W.Va. 111, 133 S.E.2d 735 (1963), we further said:

The question as to whether a person is an employee or an independent contractor depends on the facts in any given case and all elements must be considered together. Among the elements to be considered are the manner of selection of the person who is to do the work, how the person is to be paid for such work, the right to hire and to fire, and the right or power of control or supervision in connection with the work to be done, but the most important element is the one last mentioned.

■ In *Shaffer v. Acme Limestone Co.,* 206 W.Va. 333, 524 S.E.2d 688 (1999), we distinguished a broad, general right of control from control over the *manner* in which the work is to be done. We said:

An owner who engages an independent contractor to perform a job for him or her may retain broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the contract—including the right to inspect, to stop the work, to make suggestions or recommendations as to the details of the work, or to prescribe alterations or deviations in the work—without changing the relationship from that of owner and independent contractor, or changing the duties arising from that relationship.

*Id.* at 338, 524 S.E.2d at 693, syl. pt. 4.

■ With these principles in mind, we proceed to consider the determinations of the court below. One touchstone for this consideration is the principle that "[a]lthough our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed." Syl. Pt. 3, *Fayette County Nat. Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997).

We agree with the findings of the lower court, enunciated in its final order, that the facts in the record before the lower court are undisputed. However, as we read the record and the findings below, the lower court also concluded that it had before it the complete contract between Appellant and Mr. Tyler. We have great difficulty discerning the basis of that conclusion.

We note that the entirety of the writings supposedly constituting the contract are not in the record because there is a reference to specifications by the architects which are not among the papers before us. The principal

contract document in the record is a letter dated November 13, 1996. The letter recites that it is in reference to a "professional services contract" and proceeds to set forth five specific undertakings by Mr. Tyler and his compensation for the work. The first undertaking is to perform services outlined on an attached "list stated in the specifications outline prepared by the Fairfax Architects in June, 1996," a two-page, single-spaced enumeration of services. The fourth undertaking stated in the letter is to supervise *"on site"* the interior and exterior renovations "as shown in the Fairfax Architects final plans . . . ." (Emphasis added.) This letter is signed by Mr. McKeen, but not by Mr. Tyler. We find no testimony or other evidence in the record to establish whether these documents constitute the whole of the contract. Therefore, on the record before us, we have reason to doubt the conclusion of the court below in that regard.

■ As we have said before, the absence of a dispute as to the facts is not alone determinative of the propriety of a summary judgment. First, Rule 56 of the West Virginia Rules of Civil Procedure requires that the trial court also determine that the movant is entitled to judgment as a matter of law.[2] *See* W.Va.Rul.Civ.P. 56. In syllabus point three of *Aetna Casualty & Surety Co. v. Federal Insurance Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963), we stated: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." In the case before us, where the principal issue turns in large part upon what Appellant and Mr. Tyler agreed to in the contract designating Mr. Tyler as "construction manager," it appears that it would be critical for the record to establish clearly that the relevant documents in the record constitute the entire contract or, if not, what additional or other terms constituted the whole contract.

■ In its order entered June 28, 2000, the lower court concluded that the evidence demonstrated that while MLA desired to retain control of Mr. Tyler, it failed to do so "from the point he was hired through completion of the relationship." This Court is utterly unable to find any evidence in the record—one way or the other—to support this conclusion. In this connection, we note the rule, as set forth in *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995), that a court considering a motion for summary judgment "must grant the nonmoving party the benefit of inferences, as '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]'" *Id.* at 59, 459 S.E.2d at 336 (1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Further, the *Williams* court stated, "[s]ummary judgment should be denied 'even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.'" 194 W.Va. at 59, 459 S.E.2d at 336 (quoting *Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.1951)). We have also stated that "[a] party who moves for summary judgment has the burden of showing that there is no genuine issue of material fact and any doubt as to the existence of such an issue is to be resolved against the movant for such judgment." Syl. Pt. 6, *Aetna Cas.,* 148 W.Va. at 161, 133 S.E.2d at 772.

■ There is no doubt that the documents which the trial court considers to constitute the contract between MLA and Mr. Tyler appear to repose considerable discretion in Mr. Tyler. However, those documents do not negate the ordinary power of an employer to direct the *manner* in which Mr. Tyler performed those tasks. For example, while Mr. Tyler was directed in those documents to "negotiate" contracts with subcontractors on behalf of MLA, as general contractor, the documents are utterly silent as to whether competitive or comparative bids were to be

**2.** Rule 56(c) of the West Virginia Rules of Civil Procedure states, in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W.Va.Rul.Civ.P. 56(c).

sought and they are similarly silent on whether contracts negotiated required ultimate board approval or, on the other hand, might be entered into by Mr. Tyler over the express opposition of MLA.

In short, this Court believes that there was genuine doubt as to whether MLA *retained the right* to exercise control of Mr. Tyler. On summary judgment, that doubt must be resolved against the movants, Appellees here.

■ The parties to this appeal filed cross-motions for summary judgment. We have previously determined that the mere filing of such cross-motions for summary judgment by the parties does not resolve the issue of whether there is no material issue of fact and summary judgment is appropriate. We have stated that " '[a] motion by both plaintiff and defendant for summary judgment under Rule 56, R.C.P. does not constitute a determination that there is no issue of fact to be tried and if a genuine issue of material fact is involved both motions should be denied.' Syl. pt. 3, *Haga v. King Coal Chevrolet Company*, 151 W.Va. 125, 150 S.E.2d 599 (1966)" Syl. Pt. 4, *Warner v. Haught, Inc.*, 174 W.Va. 722, 329 S.E.2d 88 (1985). Appellees were, for the purposes of the summary judgment appealed to this Court, the movants, with the burden of showing entitlement to a summary judgment and against whom permissible inferences were to be drawn.

■ Appellant urges the view that the lower court overlooked the distinction between *retaining the right to exercise control* and *actually exercising the right of control.* We have studied the language employed by the court below carefully and cannot determine whether the lower court recognized that distinction. However, we do note that, while an employer's actual exercise of the *right* to control may prove, or tend to prove, the existence of the *right* to control, the *failure* to exercise a duly reserved right to control does not, by itself, prove the absence of that right. We perceive that the lower court may well have determined that the record below did not demonstrate an actual exercise by MLA of control over the manner in which Mr. Tyler performed his duties and

may have improperly given some weight to that conclusion in reaching the judgment that Mr. Tyler was not an employee of MLA.

■ We cannot escape the conclusion that the lower court weighed the evidence and decided the underlying factual question in this case. As we have said: "The question to be decided on a motion for summary judgment is whether there is a genuine issue of material fact and not how that issue should be determined." Syl. Pt. 5, *Aetna Cas.*, 148 W.Va. at 160, 133 S.E.2d at 771.

The lower court considered several factors in reaching its conclusion, citing these "Facts" in its final order:

> ... Mr. Tyler paid his own taxes and was not included as an employee for workers compensation coverage purposes. Mr. Tyler held a temporary position with Mountain Lodge Association. Mr. Tyler had a "Professional Services Contract" that specified that the "Prize" [sic], his salary, was set at "$65,000 plus 25% of all savings above the first $40,000 savings on estimated cost." While Mountain Lodge Association may have desired to supervise the actions of Mr. Tyler, it did not retain, nor did it exercise control, over Mr. Tyler.

■ This Court has stated that "[t]o ascertain whether a workman is an employee or an independent contractor each case must be resolved on its own facts and ordinarily no one feature of the relationship is controlling, but all must be considered together." Syl. Pt. 1, *Myers*, 150 W.Va. at 563, 148 S.E.2d at 665. However, we have identified the major factor: "In determining whether a workman is an employee or an independent contractor, the controlling factor is whether the hiring party retains the right to control and supervise the work to be done." Syl. Pt. 2, *Myers*, 150 W.Va. at 563, 148 S.E.2d at 665.

We do not perceive that the "facts" relied on by the trial court, recited above, compel the conclusion that Mr. Tyler was an independent contractor because they do not directly address the *right to control and supervise his work.* We cannot conclude that the lower court had before it a full picture of the relationship between MLA and Mr. Tyler.

The limits of the evidence before the trial court are illustrated by the truncated recitals in the record regarding the various communications between MLA and Mr. Tyler and the memorandum of the phone conversation in March 1997, in which MLA, Mr. Tyler and a representative of the insurance firms participated. It is readily apparent that those documents do not reveal the whole story of what transpired as a result of those communications or as a result of work commencing under MLA's "construction manager" arrangement with Mr. Tyler. For example, it is clear from the record that Mr. Tyler, at least once, met with the board to discuss problems. What were the details of that meeting? Would those details shed light on the issue? To what extent did Mr. Tyler meet at other times with the board or Mr. McKeen on matters affecting how Mr. Tyler was performing his duties? Did Mr. Tyler acknowledge his employment status (rather than independent contractor status) in the March 1997, telephone conversation?

We have not had prior occasion to address the nature of the relationship between a "construction manager" and a property owner, acting as its own "general contractor." On the state of the record before us, we are reluctant to characterize the relationship here because the real nature of that relationship is so dependent upon what occurred between the parties to the "construction management" contract, particularly in its formation. In short, it appears that a finder of fact might conclude that Mr. Tyler was an employee, as in *Spencer*, or that Mr. Tyler was an independent contractor, as in *Shaffer*.

This Court has said that the standard of review for declaratory judgment is *de novo*. See *Cox*, 195 W.Va. at 610, 466 S.E.2d at 461, syl. pt. 3. We have also said that, in those cases, "any determinations of fact made by the circuit court in reaching its ultimate reso-

lution are reviewed pursuant to a clearly erroneous standard." *Id.*, 195 W.Va. at 612, 466 S.E.2d at 463. In the case before us we need not apply that standard because the facts in the record are not in dispute. Rather, the questions here are whether reasonable minds might draw differing inferences and, therefore, conclusions from the evidence and whether there is additional evidence that might assist the finder of fact and the court in resolving the ultimate issue. We conclude that the matter must be remanded to the trial court for a full examination of the factual issues presented by the differing inferences that may be drawn from the evidence and such further development of the record as may be appropriate to determine the law applicable to those facts in the circumstances.[3]

■ Our declaratory judgment act provides that "[w]hen a proceeding under this article involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." W.Va.Code § 55–13–9 (1941). In accord with that statutory language, Rule 57 of the West Virginia Rules of Civil Procedure provides that a jury trial may be demanded in a declaratory judgment proceeding "under the circumstances and in the manner provided by Rules 38 and 39" of the West Virginia Rules of Civil Procedure. West Virginia Code § 55–13–9 and Rules 38, 39 and 57 of the Rules of Civil Procedure, read and considered together, operate to guarantee that any issue triable by a jury as a matter of right in other civil actions cognizable by the circuit courts shall, upon timely demand in a declaratory judgment proceeding, be tried to a jury. As to other issues, Rule 39 of the Rules of Civil Procedure expressly authorizes trial by the court, with or without an advisory jury.

---

**3.** On appeal MLA raised the issue of "reasonable expectations regarding their insurance coverage." It had not been raised below, and we therefore treat it as waived here. As we said in *Powderidge Unit Owners Association v. Highland Properties, Ltd.*, 196 W.Va. 692, 474 S.E.2d 872 (1996),

> [a]lthough our review of the record from a summary judgment proceeding is *de novo*, this

> Court for obvious reasons, will not consider evidence or arguments that were not presented to the circuit court for its consideration in ruling on the motion. To be clear, our review is limited to the record as it stood before the circuit court at the time of its ruling.

*Id.* at 700, 474 S.E.2d at 880. The issue of reasonable expectations may, however, be addressed in the circuit court upon remand.

In *Lorenze v. Church,* 172 W.Va. 369, 305 S.E.2d 326 (1983), we found that a jury trial was mandated in a declaratory judgment proceeding on the factual issue of whether the parties had reached agreement on an oral lease, as a prelude to the trial court determining and declaring the rights of the parties, if any, under the alleged oral lease. In that case we also re-iterated and applied the rule that " 'A trial court exceeds its legitimate powers when it denies a jury trial to one entitled thereto who makes a proper demand therefor.' Syllabus point 2, *State ex rel. W.Va. Truck Stops v. McHugh,* 160 W.Va. 294, 233 S.E.2d 729 (1977)." *Id.*

Applying these principles to the case *sub judice,* we find the controlling issue triable by a jury as a matter of right. This Court has previously stated that "[w]here the evidence relative to whether a particular person is an independent contractor or an employee is in conflict or, if not in conflict, admits of more than one reasonable inference, an issue is presented for jury determination." Syl. Pt. 1, *Levine v. Peoples Broadcasting Corp.,* 149 W.Va. 256, 140 S.E.2d 438 (1965). See also, Syl. Pt. 1, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976). Syl. Pt. 5, *Pasquale v. Ohio Power Co.,* 187 W.Va. 292, 418 S.E.2d 738 (1992). Thus, for example, were this a negligence action involving the issue of whether one of the parties was an employee or independent contractor, with inferences to be drawn from disputed or undisputed facts, the issue would be for the jury. As we noted above, our declaratory judgment act requires that the issues "be tried and determined in the same manner" as those issues might be so "tried and determined in other civil actions in the court in which the proceeding is pending." W. Va.Code § 55–13–9 (1941). Therefore, unless both parties consent to trial of the issue by the court, the controlling factual issue in the case before us of whether Mr. Tyler was an employee of MLA or an independent contractor should be submitted to a jury, either for a general verdict under proper instruction or by special interrogatories, as the trial court shall determine.

Based upon the foregoing, we reverse the summary judgment order of the circuit court and remand the matter to the lower court for further proceedings consistent with this opinion.

Reversed and Remanded.

DAVIS, Justice, dissenting.

(Filed Dec. 10, 2001)

This case required the Court to determine whether summary judgment for Crum & Forster Indemnity Co. (hereinafter referred to as "Crum") and against Mountain Lodge Association (hereinafter referred to as "MLA") was appropriate. The majority opinion concluded that the trial court erred in granting summary judgment to Crum. For the reasons outlined below, I believe the trial court correctly granted summary judgment. Therefore, I dissent from the majority opinion.

### A. The Majority Opinion Based its Decision on a Finding That an Incomplete Record Was Before the Trial Court

Crum denied insurance coverage to MLA because MLA failed to provide sufficient proof that Mr. Tyler was an employee. Crum took the position that Mr. Tyler was an independent contractor. After both parties moved for summary judgment on the issue of Mr. Tyler's status, the trial court found that no genuine issue of material fact was in dispute and granted summary judgment to Crum. In reversing the summary judgment order, the majority opinion based its decision on the following grounds:

> We agree with the findings of the lower court, enunciated in its final order, that the facts in the record before the lower court are undisputed. However, as we read the record and the findings below, the lower court also concluded that it had before it the complete contract between [MLA] and Mr. Tyler. We have difficulty discerning the basis of that conclusion.
>
> . . . .
>
> . . . In the case before us, where the principal issue turns in large part upon what [MLA] and Mr. Tyler agreed to in the contract designating Mr. Tyler as "construction manager," it appears that it would be critical for the record to establish clearly that the relevant documents in the

record constitute the entire contract or, if not, what additional or other terms constituted the whole contract.

The above reasoning utilized by the majority to reverse summary judgment is illogical and legally incorrect.

The majority opinion concluded that more information was required to determine Mr. Tyler's status with MLA. In so concluding, the majority opinion has ignored a well-settled principal of law concerning the burden on a party resisting summary judgment. The party resisting summary judgment must produce sufficient evidence to establish a dispute of a material issue of fact. In contrast to this principle, the reasoning used by the majority opinion penalizes Crum for MLA's failure to present evidence regarding the so-called "whole contract" between MLA and Mr. Tyler. In fact, Crum had no duty or burden to present such evidence. Crum's burden was "only [to] point to the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir.1990). If additional evidence existed regarding the relationship between MLA and Mr. Tyler, it was the duty of MLA to produce that evidence. *See Powderidge Unit Owners Ass'n v. Highland Props., Ltd.*, 196 W.Va. 692, 699, 474 S.E.2d 872, 879 (1996) ("To meet this burden, the nonmovant must identify specific facts in the record and articulate the precise manner in which that evidence supports its claims. As to material facts on which the nonmovant will bear the burden at trial, the nonmovant must come forward with evidence which will be sufficient to enable it to survive a motion for directed verdict at trial. If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted."). Until the decision in the instant case, neither this Court nor any court in the country had ever held that a party moving for summary judgment be denied summary judgment based upon its adversary's failure to present sufficient evidence to establish a dispute of a material issue of fact.

**1. MLA made no motion to produce additional evidence.** MLA neither argued on appeal nor before the trial court that it needed more time to obtain evidence pursuant to Rule 56(f) of the West Virginia Rules of Civil Procedure.[1] *See Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 62, 459 S.E.2d 329, 339 (1995) ("When a party does not avail himself of Rule 56(f), it is generally not an abuse of discretion for a circuit court to rule on a motion for summary judgment.").[2] If this had been done, then the majority opinion would have a logical and legal basis for its decision.[3] In syllabus point 1 of *Powderidge*, Justice Cleckley addressed the procedure that may be used by a party needing additional time to marshal evidence in opposition to summary judgment:

An opponent of a summary judgment motion requesting a continuance for further discovery need not follow the exact letter of Rule 56(f) of the West Virginia Rules of Civil Procedure in order to obtain it. When a departure from the rule occurs, it should be made in written form and in a timely manner. The statement

---

1. Rule 56(f) states:
   Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

2. *See* Syl. pt. 3, *Crain v. Lightner*, 178 W.Va. 765, 364 S.E.2d 778 (1987) ("Where a party is unable to resist a motion for summary judgment because of an inadequate opportunity to conduct discovery, that party should file an affidavit pursuant to W. Va.R.Civ.P. 56(f) and obtain a ruling thereon by the trial court. Such affidavit and ruling thereon, or other evidence that the question of a

premature summary judgment motion was presented to and decided by the trial court, must be included in the appellate record to preserve the error for review by this Court").

3. "If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of material fact, the burden of production shifts to the nonmoving party who must either: (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) or the West Virginia Rules of Civil Procedure." Syl. pt. 3, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995).

must be made, if not by affidavit, in some authoritative manner by the party under penalty of perjury or by written representations of counsel. At a minimum, the party making an informal Rule 56(f) motion must satisfy four requirements. It should (1) articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier.

*See also Harbaugh v. Coffinbarger,* 209 W.Va. 57, 543 S.E.2d 338 (2000) (per curiam) (affirming summary judgment where party failed to use Rule 56(f) to obtain additional evidence); *Payne's Hardware & Bldg. Supply, Inc. v. Apple Valley Trading Co.,* 200 W.Va. 685, 490 S.E.2d 772 (1997) (per curiam) (same); *Brewer v. Hospital Mgmt. Assocs., Inc.,* 202 W.Va. 163, 503 S.E.2d 17 (1998) (per curiam) (same); *Pennington v. Bear,* 200 W.Va. 154, 488 S.E.2d 429 (1997) (affirming summary judgment and trial court's denial of Rule 56(f) motion).

Even though MLA never asserted it had additional evidence to present to preclude summary judgment, the majority asserts that more evidence *may exist regarding the contract between MLA and Mr. Tyler.* This Court has previously held that "Rule 56 does not impose upon the circuit court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Nor is it our duty to do so on appeal." *Powderidge,* 196 W.Va. at 700, 474 S.E.2d at 880. Assuming arguendo that such evidence exists, *Powderidge* clearly establishes that summary judgment was still appropriate.

One of the issues this Court faced in *Powderidge* concerned the plaintiff's motion for reconsideration of an order granting summary judgment to the defendant. We initially observed the following regarding the plaintiff's motion for reconsideration:

The plaintiff's motion for reconsideration cites several crucial and important facts. Facts which, if properly documented and presented at the summary judgment proceeding, would have been sufficient to preclude the granting of the motion for summary judgment.

*Powderidge,* 196 W.Va. at 705, 474 S.E.2d at 885.

In the *Powderidge* motion for reconsideration, reference was made to an affidavit that this Court found created a disputed material issue of fact in the case. However, through apparent error by the plaintiff, the actual affidavit was not attached to the motion for reconsideration, and was never seen by the trial judge. The trial judge therefore denied the motion for reconsideration. In spite of the known existence of the affidavit, which was presented on appeal, this Court affirmed the denial of the plaintiff's motion for reconsideration. We reasoned in *Powderidge* as follows:

Even if the circuit court would have reconsidered its summary judgment ruling, the motion filed by the plaintiff was not sufficient to permit a different outcome. Although the motion alleged new facts, the facts were never properly documented as required by Rule 56(e). The plaintiff's proffered affidavit of Mr. Bell was never tendered to the circuit court; only some of the salient points of the affidavit were restated in the motion's memorandum. When a party opposing summary judgment fails to comply with the formalities of Rule 56(e), a circuit court may choose to be lenient in the exercise of its discretion to deal with deficiency. However, discretionary leniency does not stretch so far that Rule 56(e) becomes meaningless. *See Peterson v. United States,* 694 F.2d 943, 945 (3rd Cir.1982) (failure to attach key documents to affidavit violated Rule 56(e)); *Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1987) (unauthenticated documents may not be relied upon to defeat a motion for summary judgment).

*Powderidge,* 196 W.Va. at 706–07, 474 S.E.2d at 886–887.

*Powderidge* is clear. If evidence sufficient to preclude summary judgment exists but is

not properly presented to the trial court, summary judgment must be granted. In the instant proceeding, assuming that evidence of the majority's so-called "whole contract" exists, *Powderidge* nevertheless mandates the granting of summary judgment because such evidence was not properly tendered to the trial court. Therefore, I respectfully dissent from the majority decision in this case. I am authorized to state that Justice Maynard joins me in this dissenting opinion.